**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**ADRIAN HOYLE**                                              **PLAINTIFF**

**VS.**                            **CIVIL ACTION NO.: 3:21-cv-00171-NBB-RP**

**CITY OF HERNANDO, MISSISSIPPI,
ET AL.**                                                       **DEFENDANTS**

**MEMORANDUM IN SUPPORT OF MUNICIPAL DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT**

To say that Plaintiff Adrian Hoyle's complaint[1] is misleading would be an understatement. Prior criminal proceedings and video evidence show that it is a total sham. Nowhere in the complaint does Hoyle tell this Court that he stole a car, ran a stop light, led law enforcement on an eight-minute chase, and stopped only after he lost control and rammed the stolen car into two police vehicles. And nowhere in the complaint does Hoyle tell this Court that he pled guilty to a felony in connection with these events. Courts have long warned counsel about such a false depiction of the facts. *See, e.g., In re Ronco, Inc.*, 838 F.2d 212, 218 (7th Cir. 1988) (explaining that the omission of "facts that [a]re highly relevant to an accurate characterization of the facts" is a basis for Rule 11 sanctions).

Municipal Defendants the City of Hernando, Chief Scott Worsham, and Officer Lynn Brown should be dismissed from this case. The uncontroverted record shows that all of Hoyle's claims fail as a matter of law. This motion may be decided on the pleadings alone or, in the alternative, converted into an early request for summary judgment.[2]

---

[1] An original complaint was filed on July 30, 2021, Doc. 1, but was later amended on August 26, 2021, Doc. No. 8, meaning that the amended complaint is the operative complaint.

[2] Since Municipal Defendants have captioned their motion in the alternative, this Court is relieved of any obligation to tell the parties how it will be considered in advance of a ruling being issued. *See Mackey v. Owens*, 182 F.3d 915 (5th Cir. 1999) ("[T]he simple act of placing matters outside the pleadings before the court provides adequate notice that a motion to dismiss may be converted into a motion for summary judgment.").

## BACKGROUND

On September 3, 2020, Officer Lynn Brown observed a blue Chevrolet Malibu run a red light at a high rate of speed. Brown Dash Cam at 00:05-00:08, Doc. No. 10-1 (conventionally filed); Guilty Plea Transcript, Doc. No. 10-2. Officer Brown activated his emergency lights and attempted to stop the car. Brown Dash Cam at 00:08-00:10, Doc. No. 10-1; Guilty Plea Transcript, Doc. No. 10-2. The car did not stop and instead led officers on an eight-minute high speed chase, all of which is captured on dash cam video. Brown Dash Cam at 00:10-7:58, Doc. No. 10-1.

During the chase, the car drove erratically, passed vehicles, drove on the wrong side of the road, forced cars off the road, and nearly hit other cars. *Id.*; Guilty Plea Transcript, Doc. No. 10-2. Eventually it lost control and drove into a ditch. Brown Dash Cam at 7:58-8:01, Doc. No. 10-1. Even in the ditch the car refused to stop and instead attempted to get back on the road. *Id.* In doing so, it hit both Officer Brown's and Officer Solomon's vehicles before finally stopping. *Id.* at 8:01-8:08

The driver of the car was Hoyle, who later admitted to stealing the Malibu in Memphis. *Id.*; Memphis Incident Report, Doc. No. 10-3. As Hoyle exited the vehicle, Officer Brown deployed his canine. Brown Dash Cam at 8:13-8:17, Doc. No. 10-1; Guilty Plea Transcript, Doc. No. 10-2. Hoyle could be seen moving around in the vehicle prior to exiting. Brown Dash Cam at 8:10-8:12, Doc. No. 10-1. The video shows that, from the time Hoyle's hands emerge from the vehicle until the time the canine engages Hoyle, approximately two seconds pass. Brown Dash Cam at 8:15-8:17, Doc. No. 10-1. As the officers attempted to apprehend Hoyle, Hoyle continued resisting. *Id.* at 8:19-9:00; Guilty Plea Transcript, Doc. No. 10-2.[3] The officers finally were able to secure Hoyle in handcuffs, and the canine was disengaged. Brown Dash

---

[3] Officer Solomon can be seen striking Hoyle as the officers were attempting to detain him. But Solomon has not been sued in this case.

PD.35333650.1

Cam at 9:00-9:11, Doc. No. 10-1. Hoyle then was taken to the hospital for treatment and charged with felony fleeing and possession of stolen property. Incident Report, Doc. No. 10-4; Injury Photo, Doc. No. 10-6. Two charges of assault on a law enforcement officer were later added. *See* Notice of Criminal Disposition, Doc. No. 10-5.

In June 2021, Hoyle entered into a plea bargain, in which he pled guilty to felony fleeing in exchange for the other charges being remanded.[4] Doc. No. 10-2 is the transcript from Hoyle's sentencing, inclusive of an accepted factual basis provided by the prosecution. Hoyle was sentenced to 274 days' time served, with the sentencing judge noting that Hoyle's criminal defense attorney, Victoria Washington, had "done a good job" on Hoyle's behalf, apparently doing "some fancy plea bargaining with the State." Doc. No 10-2 at p.15.

Less than a month after Hoyle was sentenced he sent a notice of claim to the City of Hernando. Notice of Claim, Doc. No. 10-8. Then, 28 days later, he filed suit in this Court. Doc. No. 1. The complaint was amended in August 2021. Doc. No. 8.

## STANDARD OF REVIEW

The federal rules offer a number of ways to challenge a plaintiff's case, including a motion to dismiss under Rule 12(c) and a summary-judgment motion under Rule 56. Municipal Defendants invoke both rules here.

Under Rule 12(c), like Rule 12(b)(6), the central question is whether the complaint includes claims that are plausible. *Bell Atl. Co. v. Twombly*, 550 U.S. 554, 555–62 (2007). This question is answered by comparing the legal claims that have been identified in the complaint with the factual allegations offered in support, inclusive of any exhibits attached to the complaint and answer. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015) ("In considering a motion for judgment on the pleadings

---

[4] It is unclear to undersigned counsel whether Hoyle was charged in Tennessee with the car theft.

under Rule 12(c), the court is generally limited to the contents of the pleadings, including attachments thereto. The 'pleadings' include the complaint[ and] answer to the complaint[.]"); *Housing Authority Risk Retention Group, Inc. v. Chicago Housing Authority*, 378 F.3d 596, 600 (7th Cir. 2004) ("In a motion for judgment on the pleadings, the court considers the pleadings alone, which consist of the complaint, the answer, and any written instruments attached as exhibits."). To be plausible, the Court must be able to draw a reasonable inference that the defendants are liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Merely reciting the elements of a cause of action, or making conclusory factual or legal assertions, is insufficient to defeat a motion to dismiss. *Jordan v. Flexton*, 729 F. App'x 282, 284 (5th Cir. 2018).

Under Rule 56, the central question is whether the record evidence provides a viable basis for relief as opposed to looking to the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). This question is answered by determining if there are genuine issues of material fact, such that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). To avoid summary judgment, a plaintiff must produce evidence of "specific facts showing the existence of a genuine issue for trial." *Foulston Siefkin LLP v. Wells Fargo Bank of Texas, N.A.*, 465 F.3d 211, 214 (5th Cir. 2006). A factual issue is "material only if its resolution could affect the outcome of the action," *Burrell v. Dr. Pepper/Seven Up Bottling Grp.*, 482 F.3d 408, 411 (5th Cir. 2007), and "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment," *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (quotation omitted).

## ARGUMENT & AUTHORITIES

The complaint includes claims under both federal and state law against the City[5] and Officer Brown. On the federal side, Hoyle refers to "civil rights violations[,]" specifically unlawful seizure, excessive force, and violation of his due process rights. Doc. No. 8 at pp.6-7. On the state side, Hoyle refers to negligent hiring, supervision, and retention as well as negligent and/or intentional infliction of emotional distress. *Id*. at pp.14-15. Neither federal nor state law provides any relief.[6]

### Federal Law

Section 1983 is the procedural avenue Hoyle must take to pursue constitutional violations, *Escamilla v. Elliot*, 816 F. App'x 919, 922-25 (5th Cir. 2020), and the governing legal standards are settled. Actions against municipalities are analyzed under a framework that requires a plaintiff to show both (1) that a violation of the Constitution occurred and (2) that a governmental policy or custom was the moving force behind the violation. *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009). Alternatively, individual-capacity defendants enjoy qualified immunity, meaning that a plaintiff must show both (1) that a violation of the Constitution occurred and (2) that the individual-capacity defendants' acted objectively unreasonable under clearly established law. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252-53 (5th Cir. 2005).

Hoyle's claims are deficient in their totality. Most fundamentally, there can be no liability against any defendant because Hoyle cannot prove a constitutional violation. Moreover, even if Hoyle could make such a showing, there still would be no liability because he cannot

---

[5] Chief Scott Worsham is a named defendant, but only "in his official capacity as Chief of Police of the Hernando Police Department[.]" Doc. No. 8 at p.1. Any claims against him are thus duplicative of the claims against the City. *See Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001).

[6] At pages five and six of the complaint, Hoyle includes a section entitled, "**IV. SPOILATION OF EVIDENCE**[.]" Doc. No. 8 (emphasis in original). But "[s]poliation has been explicitly rejected as an independent cause of action by the Mississippi Supreme Court." *Fikes v. Wal-Mart Stores, Inc.*, 813 F. Supp. 2d 815, 819 (N.D. Miss. 2011). And federal law of course does not provide an independent cause of action for spoliation.

establish a basis for *Monell* liability against the City or objectively unreasonable conduct under clearly established law against Officer Brown.

**No Constitutional Violation.** Hoyle claims that Officer Brown violated his Fourth and Fourteenth[7] Amendment rights by arresting him and using excessive force on him with a canine. Doc. No. 8 at p.3, p.7. These charges are meritless.

*No Unlawful Arrest.* Hoyle was arrested on September 3, 2020 and charged with felony fleeing, possession of stolen property, and two charges of assault on a law enforcement officer. Notice of Criminal Disposition, Doc. No. 10-5. In June 2021, he pled guilty to felony fleeing, and the other charges were remanded. *Id.*; Guilty Plea Transcript, Ex. 10-2.

The unlawful arrest claim is frivolous given the guilty plea. Significantly, to demonstrate a Fourth Amendment violation, Hoyle would have to prove that he was arrested without probable cause. *Bryant v. City of Ripley*, 2015 WL 1419489, *1 (N.D. Miss. 2015) (Biggers, J.). That is impossible here because, under the doctrine of *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), Section 1983 may not be used to undermine a prior criminal conviction. Hoyle's conviction conclusively establishes the existence of probable cause, which in turn defeats his unlawful arrest claim. *See Bryant*, 2015 WL 1419489 at *1 ("[A] criminal conviction necessarily implies that probable cause existed for that particular charge, and by extension, the arrest for that charge.").

But even without the conviction, there was plenty of probable cause to arrest Hoyle. "Probable cause for a warrantless arrest exists when the totality of facts and circumstances within

---

[7] Though Hoyle's complaint references the Fourteenth Amendment, *see* Doc. No. 8 at p.7, allegations of unlawful arrest and excessive force by an arrestee must be brought under the Fourth Amendment, i.e. the more explicit constitutional source. *See, e.g., Harness v. Hosemann*, No. 3:17-cv-791-DPJ-FKB, 2019 WL 8113392, *12 n.7 (S.D. Miss. Aug. 7, 2019) ("In *Graham v. Connor*, the United States Supreme Court held that claims related to search-and-seizure violations fall under the Fourth Amendment rather than the substantive-due-process provisions found in the Fourteenth Amendment."). But even if that were not so, Hoyle would be required to demonstrate "conscience shocking" behavior for purposes of a due-process claim. That standard "is extremely high, requiring stunning evidence of arbitrariness and caprice[.]" *Doe ex rel. Magee v. Covington County Sch. Dist. ex rel. Keys*, 675 F.3d 849, 867 (5th Cir. 2012). "[F]orcibly pumping [a] criminal suspect's stomach" is the type of behavior that might suffice, *e.g. GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 368 (7th Cir. 2019), not arresting someone and releasing a canine after flight.

PD.35333650.1

a police officer's knowledge at the moment of the arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Carr v. Hoover*, 837 F. App'x 279, 283 (5th Cir. 2020) (quotations and citation omitted). At the time of Hoyle's arrest, it was apparent to law enforcement that Hoyle ran a red light, fled from police, and hit two police cruisers with the car he was driving. *See generally* Brown Dash Cam Video, Doc. No. 10-1; Guilty Plea Transcript, Doc. No. 10-2.

*No Excessive Force.* Hoyle also claims that Officer Brown subjected him to excessive force in the course of the arrest. Specifically, he claims that Officer Brown unlawfully released his canine when the chase ended.[8] The law is clear that canine bites are subject to a Fourth Amendment excessive-force analysis. *See, e.g., Shumpert v. City of Tupelo*, 905 F.3d 310, 321-23 (5th Cir. 2018).

To bring a § 1983 excessive force claim, a plaintiff must show that he suffered an injury that resulted from force that was excessive to the need, i.e. "objectively unreasonable." *See Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). Importantly, not every exertion of force that may in hindsight seem unnecessary violates the Constitution. *See Jackson v. Gautreaux*, 3 F.4th 182, 186 (5th Cir. 2021). Excessive force claims must be considered from the viewpoint "of a reasonable officer on the scene[,]" and courts should not "second-guess[ ] a police officer's assessment . . . of the danger presented by a particular situation." *Id.* (quoted cases omitted).

In this case, Hoyle blatantly mischaracterizes the events of September 3, 2020. His complaint omits that he stole a vehicle, ran a red light, and took law enforcement on an eight-minute pursuit at a high rate of speed, only stopping after he lost control and struck two police

---

[8] While the complaint generally alleges that Officer Brown "physically attack[ed] and assault[ed]" him, Doc. No. 8 at p.4, the video evidence proves this allegation to be false. The only officer who physically struck Hoyle was Officer Solomon, who has not been named as a defendant. As will be discussed, Hoyle is not permitted to allege things that contradict the video.

vehicles. *Compare* Doc. No. 8 *with* Brown Dash Cam Video, Doc. No. 10-1, *and* Guilty Plea Transcript, Doc. No. 10-2. The complaint instead portrays the events as Hoyle "compl[ying] with all of the officers' commands with his hands above his head clearly visible and gesturing submission and surrender, and . . . in no way resisting when Officer Brown deployed his assigned Hernando Police Department K-9 to attack [him] when he was completely defenseless and compliant." Doc. No. 8 at p.4. Hoyle's mistruths – although concerning from a duty-of-candor standpoint – are immaterial for purposes of this motion for two reasons.

First is his guilty plea, in which he admitted to the following factual basis provided by the prosecution:

> (1) that he "operated [a] motor vehicle in a reckless manner with willful disregard for the safety of persons or property or in a manner manifesting extreme indifference to the value of human life[,]" specifically driving "at a high rate of speed" in an "erratic" manner, "passing vehicles, driving on the wrong side of the road, [and] forcing cars off the roadway nearly hitting other vehicles[;]" (2) that he "refuse[d] to bring [a] motor vehicle to a stop after being given a visible or audible signal [b]y Officer Lynn Brown . . . who had reasonable suspicion to believe that [Hoyle] had committed a crime[;]" (3) that he "well kn[ew] that Officer Lynn Brown was in fact a law enforcement officer acting within the scope of his duty[;]" (4) that he eventually "lost control, [ ] ran off the road[,]" and, when "officers tried to box him in[,]" he struck "both officers['] . . . vehicles" before "finally c[oming] to a stop[;]" and (5) that the "the officers deployed a K9 to apprehend the suspect fearing [Hoyle] may have a weapon."

Guilty Plea Transcript, Doc. No. 10-2 at pp.8-9. In light of Hoyle's acceptance of these facts to secure a plea bargain, he may not now rely on a different version of events in this civil case. *See United States v. Union Treatment Ctrs., LLC*, 2019 WL 571349, *6 (W.D. Tex. 2019) ("Craighead is collaterally estopped from re-litigating his conviction or controverting the factual basis for the plea agreement."); *see also Kuar v. Mawn*, 2011 WL 838911, at *6 (E.D.N.Y. Mar. 4, 2011) ("[U]nder the doctrine of judicial estoppel, the Court will preclude plaintiff from taking

factual positions in this case which are directly contrary to statements that he made in connection with his plea and that were adopted by the court which accepted his plea[.]").[9]

Second is the dashcam video, which Hoyle also is not permitted to contradict. *See Hernandez v. Town of Gilbert*, 989 F.3d 739, 745 (9th Cir. 2021) (While the plaintiff "claims that the duration of Murphy's bite was unreasonable because he had surrendered[,] [t]he video belies his argument.").[10]   In this vein, the video's conclusive depiction of Hoyle's flight is significant. *See, e.g., Hogan v. Cunningham*, 722 F.3d 725, 734 (5th Cir. 2013) (explaining that, in excessive force cases, courts must consider whether the arrestee actively resisted or attempted to evade the arrest).

In other canine cases where plaintiffs have resisted, the Fifth Circuit has made clear that it is not constitutionally excessive to release a canine to effectuate the arrest. *See, e.g., Hinson v. Martin*, 853 F. App'x 926, 931 (5th Cir. 2021) ("It was objectively reasonable for Martin to deploy Rex to conclude Hinson's evasion.  Hinson has therefore failed to establish that Martin violated his Fourth Amendment rights by using Rex to apprehend him, and the district court erred by denying Martin summary judgment based on qualified immunity as to Hinson's claims insofar as they are based on the initial dog bite that brought him to the ground.").  And such holdings are consistent with rulings in other jurisdictions. *See, e.g., Hernandez*, 989 F.3d at 744 (affirming summary judgment in canine excessive force case, where "[t]he evidence [wa]s undisputed that Hernandez fled from Officer Robinson and tried to lock himself inside his garage to avoid being arrested"). The rationale undergirding these cases is threefold: that (1) canine

---

[9] *See further Garcia v. Greco*, 2010 WL 446446, *6 (S.D.N.Y. 2010) (explaining that plaintiff claiming excessive force who pled guilty to attempted assault of a police officer, after "having obtained the benefits of a favorable plea by making sworn admissions in open court . . . cannot now also claim to be the passive victim as depicted in his deposition"); *Perlleshi v. Cty. of Westchester*, 2000 WL 554294, *5–6 (S.D.N.Y. 2000) (explaining that plaintiff who pled guilty to resisting arrest was judicially estopped from contradicting the factual basis for the plea in a subsequent excessive-force proceeding).

[10] The rule that video evidence cannot be contradicted comes from the Supreme Court's decision in *Scott v. Harris*, 550 U.S. 372, 381 (2007). *See also Rich v. Palko*, 920 F.3d 288, 293 n.3 (5th Cir. 2019); *Shepherd v. City of Shreveport*, 920 F.3d 278, 283 (5th Cir. 2019).

deployment is a justified use of force to combat felony crimes; (2) canine deployment is justified in detaining a fleeing suspect; and (3) it is reasonable for an officer to treat a fleeing suspect as armed and dangerous. *See Hinson*, 853 F. App'x at 930-33; *Hernandez*, 989 F.3d at 744-47.

The bottom line is that Officer Brown's release of the canine after Hoyle (1) stole a car, (2) ran from police for eight minutes, (3) displayed a blatant disregard for human life, and (4) could be seen moving around in the vehicle prior to exiting was not excessive. *See generally* Brown Dash Cam, Doc. No. 10-1; Guilty Plea Transcript, Doc. No. 10-2. It was instead a justified action "of a reasonable officer on the scene" that should not be "second-guessed]" in light "of the danger presented by a particular situation." *See Jackson*, 3 F.4th at 186.

**Qualified Immunity.** Even if Hoyle could demonstrate a constitutional violation against Officer Brown, he still would be entitled to dismissal on qualified immunity grounds. Indeed, when qualified immunity is asserted, "it is not enough for [p]laintiff[s] to adequately demonstrate constitutional violations." *Franco v. Kluge*, 2015 WL 1637688, *4 (W.D. Tex. 2015).

Officers are entitled to qualified immunity unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "Clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing'" is unlawful. *Id.* (citation omitted). In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *Id.* This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." *Id.*

*Framework.* Hoyle shoulders the burden of defeating qualified immunity. *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020). To do so, he has two options: (1) proffer a precedential case that "squarely governs" the conduct at issue, i.e. "the analogous-case

requirement" or (2) demonstrate the conduct at issue is an "obvious" case of unconstitutional behavior, i.e. the "obvious" exception. *Cope v. Cogdill*, 3 F. 4th 198, 204-12 (5th Cir. 2021).

This case certainly does not implicate the very rare "obviousness" exception, for "[t]he standard for obviousness is sky high[.]" *See Joseph v. Bartlett*, 981 F.3d 319, 337 (5th Cir. 2020). Both Hoyle's unlawful arrest and excessive force claims contain a "reasonableness" analysis, and, in such circumstances, the Supreme Court has warned that proffering an analogous case is "especially important[.]" *See Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). Unless <u>every</u> single reasonable officer on the street would know "in the blink of an eye" that his or her conduct is unconstitutional because of the authoritative precedent, then qualified immunity must be granted. *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019); *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (quoting Supreme Court precedent). This requires a high "degree of specificity." *Wesby*, 133 S. Ct. at 590 (citation omitted). The Supreme Court has "repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id.* This principle reflects a "manifestation of the law's general concern about retroactive punishment or liability." *Wesby v. District of Columbia*, 816 F.3d 96, 110 (D.C. Cir. 2016) (Kavanaugh, J., dissenting) (citing Supreme Court precedent).

*Application of the Qualified Immunity Framework.* Applying these standards to this case, there is no governing authority holding that Officer Brown acted objectively unreasonable under clearly established law. The preceding discussion explains why Hoyle's arrest was lawful both because of his conviction and because there was probable cause to arrest, but, for purposes of qualified immunity, mere "arguable probable cause" is all that was required. *See Wesby*, 138 S. Ct. at 591 ("Even assuming the officers lacked actual probable cause to arrest [ ], the officers are entitled to qualified immunity because they 'reasonably but mistakenly conclude[d] that probable

cause [wa]s present.'"). Similarly, for purposes of the excessive force claim, Officer Brown was only required to have a reasonable – even if mistaken – belief that deploying his canine was justified. *See Anderson v. Creighton*, 483 U.S. 635, 641 (1987) (qualified immunity protects reasonable, though mistaken, judgments by law enforcement).

In sum, the Fifth Circuit has reiterated that "[t]he qualified-immunity doctrine makes" obtaining "money damages from the personal pocket of a law enforcement officer" "difficult in every case." *See Morrow*, 917 F.3d at 874. In that same opinion, the Fifth Circuit explained that qualified immunity presented a "heavy burden" for plaintiffs and that the denial of qualified immunity is an "extraordinary remedy." *Id.* at 874-76. Since Hoyle will not be able to demonstrate that Officer Brown acted objectively unreasonably under clearly established law, he is at minimum entitled to qualified immunity.

**No Municipal Liability.** It is well established that, "[w]ithout an underlying constitutional violation, an essential element of municipal liability is missing." *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Magee*, 675 F.3d 849, 867 (5th Cir. 2012). Because Hoyle cannot demonstrate a constitutional violation, there necessarily can be no municipal liability. *Id.*

But even if Hoyle could demonstrate a constitutional violation, a mere violation is never enough, since municipalities are not vicariously responsible for the actions or inactions of their employees. *See Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). There instead must be "something more" to impose liability on a municipality, i.e. a demonstration that the constitutional violation occurred because of a municipal policy or custom. *Id.* Hoyle has not identified an express policy that he believes is unconstitutional, nor has he identified a

12

widespread pattern of similar instances[11] that could give rise to an unofficial municipal custom. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011) (explaining that an unofficial custom must be "so persistent and widespread as to practically have the force of law"); *see Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850-51 (5th Cir. 2009) (explaining that, under the "demanding" unofficial custom theory, a plaintiff must identify "sufficiently numerous prior incidents" and those prior incidents must be both similar and specific to the alleged violation in question). He instead anchors his case on alleged inadequate training and supposed ratification of Officer Brown's actions. Both are addressed in turn.

*Inadequate Training*. Such a theory is meritless on these facts. For failure-to-train liability to attach, a municipal policymaker must have been deliberately indifferent, and the deliberate indifference must have "actually caused" Hoyle's constitutional rights to have been violated. *See, e.g., Brown v. Callahan*, 623 F.3d 249, 253-54 (5th Cir. 2010). Hoyle's theory fails under both requirements.

Policymaker Deliberate Indifference. For starters, Hoyle asserts that Chief Worsham is the policymaker. Doc. No. 8 at ¶3. But policymakers are defined by state law, *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016), and, in Mississippi, the board of aldermen is the final policymaker. *See Riggins v. City of Indianola*, 196 F. Supp. 3d 681, 691-92 (N.D. Miss. 2016). Hoyle's municipal liability theory is a non-starter for the simple reason that the complaint does not articulate anything specific that the board supposedly did wrong.

---

[11] In the complaint, Hoyle discusses Judge Mills' opinion in *Cooper v. Brown*, 156 F. Supp. 3d 818 (N.D. Miss. 2016). But a single prior incident, even involving the same officer, falls far short of the required "widespread practice" necessary to create *Monell* liability under the unofficial custom theory. *See, e.g., Brown v. Bryan Cty.*, 219 F.3d 450, 457 (5th Cir. 2000); *see also Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) (27 excessive force complaints in three-year period insufficient to create a fact dispute); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (11 incidents insufficient to create a fact dispute); *Hamilton v. Rodgers*, 791 F.2d 439, 443 (5th Cir. 1986) (12 incidents in two and a half years insufficient to create a fact dispute), *abrogated on other grounds by* 913 F.2d 226 (5th Cir. 1990)). Plus, as discussed, this Court need not even reach the policy/custom inquiry because Officer Brown's conduct did not violate the Constitution.

But there of course is no deliberate indifference in any event. Deliberate indifference is "an extremely high standard" in the context of individuals, *see Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001), and is even more "stringent" when it comes to a governmental entity. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011). To put the standard in context, the Supreme Court has never found governmental liability based on a failure-to-train theory. *See Pena v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018). Perhaps that is because, as Judge Easterbrook recently reminded, "the Constitution does not require training" or "require every municipality to implement current understandings of best practices[.]" *See J.K.J. v. Polk Cty.*, 960 F.3d 367, 386 (7th Cir. 2020) (Easterbrook, J., dissenting in part). Quite differently, "[t]he duty is to avoid unconstitutional policies." *Id.*

There is no argument here that the City's written policies are unconstitutional. Hoyle's position instead is that the City should have had things in place to better monitor officer behavior. Doc. No. 8 at p.12. But this theory of liability fails because there is no constitutional requirement that a city have such measures in place. All that is required is that a city not have an unconstitutional policy, for best practices are not the standard. *See J.K.J.*, 960 F.3d at 386-87 (Easterbrook, J., dissenting in part).

It is settled that a pattern of similar incidents is "ordinarily necessary"[12] to succeed in a failure-to-train case. *See Bd. of Bryan Cty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997). Underscoring this rule is *Sanders-Burns v. City of Plano*, 594 F.3d 366, 382 (5th Cir. 2010), where no deliberate indifference could be found since the plaintiff "fail[ed] to allege another

---

[12] Hoyle has not invoked the extremely rare single incident exception of municipal liability. But even if he had, it has no application to this case. The exception "is generally reserved for those cases in which the government actor was provided no training whatsoever." *Pena*, 879 F.3d at 624. It is undeniable that training was provided here. What's more is that, even in situations where no training is provided, a plaintiff must show that the specific injury in question was the "highly predictable consequence" of the failure to train. *See Hutcheson v. Dallas Cty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021). Hoyle has not attempted to set forth facts supporting that standard, and the evidence would not support it anyway.

14

death similar to the one suffered by her son[.]" Hoyle has pled no facts alleging a widespread number of prior incidents that would satisfy the requirement.

Significantly, Officer Brown was certified under Mississippi law. *See* Brown Certification, Doc. No. 10-7. The Fifth Circuit "has held that[,] if the training of police officers meets state standards, there can be no cause of action for a failure to train absent a showing that 'this legal minimum of training was inadequate to enable [the officers] to deal with the 'usual and recurring situations' faced by jailers and peace officers." *O'Neal v. City of San Antonio*, 344 F. App'x 885, 888 (5th Cir. 2009). And courts have long held that Mississippi's police academy includes sufficient training to defeat a failure-to-train theory. *See, e.g., Estate of Pernell v. City of Columbus*, 2010 WL 1737638, *6 (N.D. Miss. 2010) (rejecting denial-of-medical-care claim based on failure-to-train, where "both Officers attended and graduated from the Mississippi law enforcement academy and [were] certified law enforcement officers"). Hoyle simply cannot prevail on a failure to train theory where, as here, Officer Brown was trained under state standards.

Causation. But there is still another obstacle to Hoyle's attempt to hold the City responsible. Even if he had adequately alleged that the City failed to train Officer Brown, there has to be sufficient causation proof. *See Bd. of Bryan Cty. Comm'rs*, 520 U.S. at 415. The Supreme Court has ordered courts to apply a "rigorous" causation standard, *id*., and application of that standard presents a question of law. *See Ratliff v. Aransas Cty., Tex.*, 948 F. 3d 281, 285 (5th Cir. 2020). Hoyle has not pled facts showing that the alleged inadequate training "actually caused" his alleged injuries.

*Ratification*. Nor does Hoyle provide any meaningful explanation in support of his contention that this case constitutes one of the "extreme factual situations" in which a ratification theory would be applicable. *See World Wide Street Preachers Fellowship v. Town of Columbia*,

591 F.3d 747, 755 (5th Cir. 2009) (quoting *Peterson*, 588 F.3d at 848). At most, Hoyle seems to complain that the City did not discipline Officer Brown. Doc. No. 8 at p.7. But such a contention is a red herring, for ratification does not result just because city officials defend an officer's behavior. *See, e.g., Medina v. Ortiz*, 623 F. App'x 695, 701 (5th Cir. 2015) ("The only evidence of ratification Medina identifies is that Ortiz accepted the officer's use of force report, refused to turn over evidence until the lawsuit was filed, and defends the deputies' actions in this case. None of these allegations show that Ortiz approved of the use of excessive force or the denial of medical care.") (citation omitted).

What's more is that, like with the failure-to-train theory, Hoyle shoulders the burden of causation. Nothing in the complaint remotely suggests that a supposed ratification of prior bad behavior is what led to Hoyle's supposed injury. *See Aguirre v. City of San Antonio*, 995 F.3d 395, 422 (5th Cir. 2021) (rejecting ratification theory, where "the Plaintiffs ma[de] no attempt to demonstrate, as is also required, that this alleged custom was 'the moving force behind the claimed constitutional violation'").

* * * *

There is no basis for liability under federal law for numerous reasons, including (1) lack of a constitutional violation, (2) qualified immunity, and (3) failure to establish the requirements under *Monell*. All claims and defendants should be dismissed.

## State Law

Pages 14 and 15 of the complaint reference "common law claims," specifically (1) negligent hiring, supervision, and retention; (2) negligent infliction of emotional distress; and (3) intentional infliction of emotional distress. "The Mississippi Tort Claims Act (MTCA) provides the exclusive civil remedy against a governmental entity or its employee for

acts or omissions which give rise to a suit." *C.W. and J.A. v. McComb Separate Municipal School District*, 754 So. 2d 1136, 1138 (Miss. 1999).

As an initial matter, Hoyle appears to misunderstand the MTCA. Although the MTCA is the statutory vehicle for "any tort claim filed against a governmental entity or its employee[,]" that does not mean that both the governmental entity and governmental employees can be liable. *Duncan v. Chamblee*, 757 So. 2d 946, 949 (Miss. 1999) (emphasis added). Individuals, on the one hand, can never be personally liable "for acts or omissions within the course and scope of their employment." *Cotton v. Paschall*, 782 So. 2d 1215, 1217 (Miss. 2001) (citing Miss. Code § 11-46-7). On the other hand, municipalities may be liable for an individual's acts or omissions but only if no exemption applies and only if a plaintiff can establish all of the substantive elements of the state-law claim being pursued. *See Grimes v. Pearl River Valley Water Supply*, 930 F.2d 441, 443 (5th Cir. 1991). This means that plaintiffs must "pick a horse" or, as Chief Judge Jordan recently put it, plaintiffs cannot "have the best of both worlds[.]" *See Hawkins v. City of Lexington*, No. 3:19cv606-DPJ-FKB at Doc. No. 71, pp.12-13 (S.D. Miss. July 9, 2021) ("So either the officers acted within the course and scope of their employment—in which case there are no individual-capacity claims—or they acted outside the course and scope of their employment, in which case the City of Lexington maintains sovereign immunity.").

Although Hoyle's complaint does not distinguish between the City and Officer Brown at pages 14 and 15, it is clear that the claims are aimed at the City. This is so for two reasons. First, Hoyle sent a MTCA notice, something that would not be required if he was suing Officer Brown for conduct outside the course and scope of his employment. *See Springer v. Ausbern Constr. Co.*, 231 So. 3d 980, 989 (Miss. 2017). Second, the complaint expressly states at page three that Officer Brown was "within the course and scope of his employment with the Hernando

Police Department[,]" which means that he is personally immune under Mississippi Code § 11-46-7.[13]

Having clarified the proper defendant, the next consideration is the governing legal standards. Hoyle's state-law claims fail for both procedural and substantive reasons.

**Procedural Problem**. Hoyle sent a notice of claim on July 2, 2021 and then filed suit on July 30, 2021. *Compare* Notice of Claim, Doc. No. 10-8 *with* Doc. No. 1. But under Mississippi Code § 11-46-11(1), a notice of claim "must" be filed "at least ninety (90) days <u>before</u> instituting suit." Since the complaint was filed a mere 28 days beforehand, Hoyle violated the MTCA's exhaustion requirement and must be dismissed.

The Mississippi Supreme Court has made clear that the notice requirement is "a 'hard-edged, mandatory rule which the Court strictly enforces.'" *Univ. of Miss. Med. Ctr. v. Easterling*, 928 So. 2d 815, 820 (Miss. 2006) (holding that plaintiff had not complied with the MTCA's notice requirement where she sent her notice of claim four months after filing suit) (quoting *Ivy v. GMAC*, 612 So. 2d 1108, 1116 (Miss. 1992)). Substantial compliance with the 90-day requirement does not suffice. *See Mathews v. City of Booneville*, 2020 WL 2615912, *8 (N.D. Miss. May 22, 2020). "No action <u>whatsoever</u> may be maintained by the claimant until the claimant receives a notice of denial of claim or the tolling period expires[.]" Miss. Code § 11-46-11(3)(b) (emphasis added). "Since the MTCA's passage in 1993, a considerable amount of time has passed for the legal profession to become aware of the ninety-day notice requirement in section 11-46-11(1)." *Univ. Miss. Med. Ctr.*, 928 So. 2d at 820.

**Substantive Problems**. Procedural issues aside, Hoyle's state law claims are exempted under the MTCA. An MTCA "exemption, like that of qualified or absolute immunity, is an

---

[13] Hoyle is also estopped from arguing otherwise since, in his guilty plea, he admitted that Officer Brown was acting "within the scope of his duty" during the incident. *See* Guilty Plea Transcript at p. 8, Doc. No. 10-2; *Kuar*, 2011 WL 838911, at *6.

entitlement not to stand trial rather than a mere defense to liability and, therefore, should be resolved at the earliest possible stage of litigation." *McElroy v. City of Brandon*, 198 So. 3d 373, 378 (Miss. Ct. App. 2015). Immunity "is a question of law[,]" meaning that it is properly addressed by motion. *Id.*

Under Mississippi Code § 11-46-9(1)(c), there is immunity "[a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury." This exemption applies here for two separate reasons: (1) Hoyle was engaged in criminal conduct and (2) Officer Brown's conduct does not amount to "reckless disregard."

To begin, it is undisputed that Hoyle pled guilty to felony fleeing and had his assault and possession charges remanded as part of plea deal. This criminal behavior automatically precludes him from state-law relief. *See Irwin-Giles v. Panola Cty.*, 253 So. 3d 922, 930 (Miss. Ct. App. 2021) ("[W]e hold that a claim is barred under section 11-46-9(1)(c) if there is a causal 'nexus between the criminal activity of the injured party and the injury suffered by him.'") (cleaned up).

What's more is that, "in the absence of criminal activity on the part of the victim, the police protection exemption still applies unless the act or omission complained of evinces a 'reckless disregard of the safety and well-being' of others[.]" *Chapman v. City of Quitman*, 954 So. 2d 468, 474 (Miss. 2007) (citation omitted) (emphasis original). "In the context of section 11-46-9(1)(c), 'reckless disregard' encompasses willful and wanton action." *Titus v. Williams,* 844 So. 2d 459, 468 (Miss. 2003) (citation omitted). Reckless disregard presents a question of law, *see City of Vicksburg v. Williams*, 294 So. 3d 599, 602 (Miss. 2020), and the Mississippi Supreme Court has recognized that, by imposing a reckless disregard standard, "the Legislature

19

set an <u>extremely high bar</u> for plaintiffs" to meet. *City of Jackson v. Presley*, 40 So. 3d 520, 523 (Miss. 2010) (emphasis added).

There is no evidence of reckless disregard here. Quite the contrary, the officers arrested Hoyle and utilized force only after he stole a car, ran a red light, fled for nearly 10 minutes, and smashed into two police cruisers. This is not the stuff of "reckless disregard."

**Punitive Damages**

Hoyle seeks punitive damages against all defendants. *See* Doc. No. 8 at pp.16-19. Because the City and the individual defendants in their official capacities are immune from such damages, Hoyle's claim for punitive damages must be dismissed, even if any claims could survive. *See, e.g.*, *Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981) (a municipality is immune from punitive damages under 42 U.S.C. § 1983); *Mitchell v. City of New Orleans*, 184 F. Supp. 3d 360, 378 (E.D. La. 2016) ("[A]lthough punitive damages can be assessed against an individual defendant sued in his individual capacity, punitive damages may not be levied against defendants in their official capacities."); Miss. Code § 11-46-15(2) ("No judgment against a governmental entity or its employee for any act or omission for which immunity is waived under this chapter shall include an award for exemplary or punitive damages[.]").

**CONCLUSION**

This Section 1983 case, which includes supplemental state-law claims, is meritless. All claims and defendants should be dismissed under Rule 12(c) or, alternatively, under Rule 56. Hoyle should have presented this Court with the real facts. He did not do so because he knew they were meritless.

Dated: September 14, 2021.

**RESPECTFULLY SUBMITTED,**

**PHELPS DUNBAR, LLP**

BY:  */s/ G. Todd Butler*
G. Todd Butler, MB #102907
Mallory K. Bland, MB #105665
4270 I-55 North
Jackson, Mississippi  39211-6391
Post Office Box 16114
Jackson, Mississippi  39236-6114
Telephone: (601) 352-2300
Telecopier: (601) 360-9777
Email:  butlert@phelps.com
blandm@phelps.com

**ATTORNEYS FOR MUNICIPAL
DEFENDANTS**

PD.35333650.1

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on September 14, 2021, I had a copy of this document electronically filed with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to all counsel of record.

*/s/ G. Todd Butler*

G. TODD BUTLER

PD.35333650.1