**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**ADRIAN HOYLE**                                                                    **PLAINTIFF**

**VS.**                                               **CIVIL ACTION NO.: 3:21-cv-00171-NBB-RP**

**CITY OF HERNANDO,
MISSISSIPPI, ET AL.**                                                      **DEFENDANTS**

**REPLY MEMORANDUM IN SUPPORT OF MUNICIPAL DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, FOR
<u>SUMMARY JUDGMENT</u>**

Rather than admit that he did not tell the real story in his complaint, Hoyle doubles down. In particular, he says that it is the movants who are hiding the ball and that all of his criminal activity prior to the dog bite is irrelevant. Neither is accurate.

As to the first, it is curious that Hoyle would question the movants' candor when they placed evidence of the actual events into the record. Doc. Nos. 10-1 and 10-2 are videos and a guilty plea transcript that allow this Court to watch and read exactly what happened for itself as opposed to relying on commentary from attorneys representing the parties. As to the second, Hoyle could not be more wrong about the materiality of his pre-bite criminal conduct. It simply is not the law that Officer Brown was supposed to forget that Hoyle had just fled and taken him on an eight minute high speed chase that ended with Hoyle hitting his police car after previously running multiple vehicles off the road while driving at a high rate of speed and on the wrong side of the road.

This reply begins by addressing the claims Hoyle abandons and then tackles the excessive force claim he continues to press. It culminates by responding to unsupported attacks lodged in the oppositional response and by responding to Hoyle's conclusory request for discovery. Dismissal of Officer Brown and the City remains appropriate.

I. **Hoyle abandons any unlawful arrest and state-law claims, attempting only to preserve an excessive force claim against Officer Brown, the City, and a recently-added defendant[1] that is not the subject of this motion.**

The opening brief read the complaint as bringing federal claims of unlawful arrest and excessive force. In response, Hoyle expressly concedes any unlawful arrest claim. Doc. No. 26 at p.12 ("Hoyle did not mean to and did not believe that he alleged an unlawful arrest without probable cause.").

The opening brief also read the complaint as bringing state claims of negligent hiring, supervision, and retention; negligent infliction of emotional distress; and intentional infliction of emotional distress. *See* Doc. No. 13 at p.5. Hoyle similarly concedes these claims, but he does so implicitly by failing to respond to the movants' arguments[2] supporting dismissal. *Compare* Doc. No. 26 at p.29 *with Burrell v. Concept Ag, LLC*, 2020 WL 5821972, *3 (N.D. Miss. 2020) (Biggers, J.) ("[T]he court finds that . . . plaintiffs have abandoned a number of claims by failing to defend them in response to defendants' motions to dismiss.").

To be sure, Hoyle does not acknowledge the most straightforward reason why Mississippi law does not allow him to sue the City for money damages: he pled guilty to a felony arising out of the facts that are the subject of this lawsuit. *Compare* Guilty Plea Transcript, Doc. No. 10-2 (showing that Hoyle pled guilty to felony fleeing) *with* Mississippi Code § 11-46-9(1)(c) (providing that a governmental entity is not liable for any claims "[a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless

---

[1] On September 27, 2021, after this motion was filed, an order was entered that substituted Officer Hunter Solomon in the place of John Doe 1. *See* Doc. No. 20. Officer Solomon is represented by separate counsel.

[2] In addition to the police-function exemption, the opening brief argued that Hoyle filed suit too early and that Officer Brown was immune under the MTCA's course-and-scope of employment provision. *See* Doc. No. 13 at pp.17-18. The parties have filed a stipulation clarifying that the City is no longer pressing its timing argument and that Hoyle is not attempting to bring any individual capacity claims under state law. *See* Doc. No. 23.

PD.35770999.1

disregard of the safety and well-being <u>of any person not engaged in criminal activity at the time of injury</u>") (emphasis added).

Although Hoyle's response says that "[w]hat preceded Brown and Solomon's attack on a surrendered suspect really bears little relevance," Doc. No. 26 at p.2, that statement is incompatible with the MTCA's police-function exemption. "What preceded" Hoyle's alleged "surrender" is precisely what bars all of the state-law claims he brought in this case. *See, e.g., Hancock v. City of Greenwood, Miss.*, 942 F. Supp. 2d 624 (N.D. Miss. 2013) ("Plaintiff's conviction on domestic violence charges is [ ] fatal to his attempts to recover against defendants under Mississippi state law[,]" where Plaintiff alleged that police "engaged in an aggressive arrest of him which included the use of pepper spray, a taser, and stepping on his hand.").

Given that Hoyle has made no attempt to show that his state-law claims can survive in light of his conviction, this Court need not reach the "reckless disregard" component of the police-function exemption. But the arguments advanced in the opening brief remain valid, particularly the Mississippi Supreme Court's acknowledgment that reckless disregard is "an extremely high bar[.]" *See* Doc. No. 13 at pp.19-20 (quoting then-Judge Graves' opinion in *City of Jackson v. Presley*, 40 So. 3d 520, 523 (Miss. 2010)). It is insufficient for Hoyle to say, with no legal authority offered, that the officers acted with reckless disregard. *See, e.g., Ronaldo Designer Jewelry, Inc. v. Cox*, 2018 WL 1370610, *2 (N.D. Miss. 2018) (collecting cases for the proposition that "[c]ourts have consistently held that inadequate briefing results in a waiver of a party's arguments") (quoted case omitted; bracket in original).

In the end, Hoyle's oppositional response seeks only to preserve an excessive force claim under federal law. It will be explained why that claim should be dismissed, but it is the only one this Court need address in any detail.

II.     **Officer Brown did not use excessive force**[3] **or, at a minimum, he is entitled to qualified immunity.**

The opening brief made two arguments: (1) that the use of the police dog to detain Hoyle after he fled was constitutional and (2) that, at a minimum, it was not "clearly established" as unconstitutional.  *See* Doc. No. 13 at pp.6-10.  Nothing in Hoyle's oppositional response defeats either argument, much less both.

Most of the response tries to support the idea that "[w]hat preceded Brown and Solomon's attack on a surrendered suspect really bears little relevance[.]" *See* Doc. No. 26 at p.2. As with the state-law claims, however, this is an erroneous statement of the law. For constitutional purposes, whether force was excessive includes an objective analysis of three non-exclusive factors, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *See Graham v. Connor*, 490 U.S. 386, 396 (1989). Hoyle's pre-bite criminal activity is material to each of these factors, and it – at minimum – provides a basis to grant qualified immunity.

**No Constitutional Violation.** Without a constitutional violation, this Court "need not address the issue of qualified immunity."  *See Rochon v. City of Angola*, 122 F.3d 319, 320 (5th Cir. 1997).  Applying the *Graham* factors to this case leads to the conclusion that Officer Brown did not violate the Fourth Amendment.

Severity of the Criminal Conduct.   Hoyle discounts the seriousness of his crime by stating that his "lawsuit for a §1983 violation and the injuries resulting from the excessive force as alleged [ ] has nothing to do with the car chase."  *See* Doc. No. 26 at p.7.  In fact, four

---

[3] In the opening brief, the movants explained why Hoyle's excessive force claim was governed by Fourth Amendment standards and not Fourteenth Amendment standards.  *See* Doc. No. 13 at p.6, n.7 (collecting authority).  Hoyle's oppositional response agrees, stating that he is pursuing "excessive force under the Fourth Amendment as applicable to the state through the Fourteenth Amendment."  *See* Doc. No. 26 at p.12 (emphasis added).

different times he attempts to characterize his pre-bite conduct as a "misdemeanor." *Id*. at pp.3, 4, 28. Case law does not permit Hoyle to narrow the facts in that manner, for courts must judge excessive force claims under the "totality of the circumstances." *See Shepherd v. City of Shreveport*, 920 F.3d 278, 286 (5th Cir. 2019).

What really happened is Hoyle committed and pled guilty to a felony, particularly felony fleeing. *See* Doc. No. 10-2. One need only watch the video filed at Doc. No. 10-1 to see how dangerous Hoyle's conduct was, as he drove erratically, passed cars at a high rate of speed, drove on the wrong side of the road, forced vehicles off of the road, and ultimately hit two police vehicles before finally stopping. Courts consistently highlight the seriousness of felony fleeing. *See, e.g., Spencer v. Biggins*, 2013 WL 5702312, *8 (M.D. Penn. 2013) ("The crimes for which Plaintiff was convicted, including felony fleeing or attempting to elude a police officer, recklessly endangering another person, and driving under the influence as a minor, are severe[.]").

And even Hoyle eventually admits to the seriousness of his actions. *See* Doc. No. 26 at p.26 (stating that Hoyle's conduct was "serious" as he "irresponsibly ran from the police endangering his own life, other motorists and the law enforcement officers"). But under his theory, Officer Brown is to blame because Officer Brown should have just let the criminal get away. *See, e.g.,* Doc. No. 26 at p.4 (arguing that, had Officer Brown not pursued Hoyle, "none of the[ ] dangerous car-on-car contacts would have been made"). The Supreme Court has rejected such logic. In *Scott v. Harris*, 550 U.S. 372, 385 (2007), the plaintiff argued that a tragic accident would have been avoided had the police ceased their pursuit. The late Justice Scalia offered an emphatic response: "We think the police need not have taken that chance and hoped for the best." *See Scott*, 550 U.S. at 385.

The first factor unquestionably weighs in Officer Brown's favor.

<u>Immediate Safety Threat.</u>  This factor already has been answered by Hoyle's guilty plea. As part of his deal, Hoyle admitted "the officers deployed a K9 to apprehend the suspect fearing [Hoyle] may have a weapon."  Doc. No. 10-2 at p.9.

The response attempts to confuse the issue by discussing the application of *Heck v. Humphrey*, 512 U.S. 477 (1994) to excessive force claims.  Doc. No. 26 at p.7.  But on that point, Hoyle's reasoning is incomplete.  *Heck* <u>sometimes</u> applies to excessive force claims and sometimes does not.  *See Arnold v. Town of Slaughter*, 100 F. App'x 321, (5th Cir. 2004) ("How *Heck* applies to excessive force claims is not always clear.").  It is not categorical.

*Arnold* collects a host of Fifth Circuit cases where *Heck* was utilized to bar excessive force claims.  *Id*. at 323 (discussing various prior decisions after acknowledging that "this circuit has recognized that certain convictions will prevent a plaintiff from bringing an excessive force claim").  Whether it does or not turns on a comparison of the liability theory set forth in the civil case and the factual basis underlying the criminal case.  *Id*. at 323-25.[4]  Ultimately, in *Arnold*, it was held that the excessive force claim was barred under *Heck* because it "squarely challenge[d] the factual determination that underlies [the plaintiff's] conviction[.]"  *Id*. at 324-25.

Hoyle's problem here is that, like in *Arnold*, his complaint presents a factual narrative that is incompatible with his conviction.  To take a few examples, the complaint alleges that (1) Officer Brown pursued Hoyle "without cause or justification," (2) that Officer Brown "initiated a traffic stop by ramming his law enforcement vehicle into the vehicle operated by Hoyle[,]" and (3) that "Officer Brown was not justified in his use of force and [ ] could not reasonably have believed in good faith that the deployment of the K-9 animal was warranted and/or necessary."  *See* Doc. No. 8 at pp.4, 9.  By contrast, Hoyle's criminal conviction resulted from admissions (1) that Officer Brown "had reasonable suspicion to believe that [Hoyle] had committed a crime[,]"

---

[4] For an in depth discussion of this issue, *see* G. Todd Butler & Nicholas F. Morisani, *Heck, Excessive Force, and the Fifth Circuit*, 29 MISS. C. L. REV. 529 (2010).

(2) that Hoyle was the one who struck "both officers['] . . . vehicles" before "finally c[oming] to a stop[,]" and (3) that "the officers deployed a K9 to apprehend the suspect fearing [Hoyle] may have a weapon." Doc. No. 10-2 at pp.8-9. Each inconsistency triggers *Heck*'s bar because "a judgment [in Hoyle's favor] would call into question the [prior] conviction." *See Arnold*, 100 F. App'x at 323.

Thus far, *Heck* has been discussed as a rule that bars <u>claims</u> of excessive force. *Id*. It may be used in that manner here, but, at a minimum, normal estoppel principles preclude Hoyle from disputing the <u>issue</u> of whether he posed a safety threat. Under settled law, a person cannot concede a point in one tribunal to achieve a desired outcome and then come back later, in a different tribunal, and renege on the same point. *See, e.g., Thore v. Howe*, 466 F.3d 173, 185-87 (1st Cir. 2006) (applying estoppel to prevent plaintiff from denying specific facts, to which he admitted during plea colloquy, that plainly defeated excessive force claim); *see also Jordan v. McKenna*, 573 So. 2d 1371, 1376 (Miss. 1990) (explaining that, in Mississippi, "a conviction in a prior criminal case is conclusive, in a subsequent civil action, of the facts upon which the conviction was based"). While Hoyle argues that it would be "ludicrous" to hold him to his admission about the officers being in fear, Doc. No. 26 at p.7, he notably does not grapple with the authorities cited in the opening brief. *Compare* Doc. No. 13 at pp.8-9 (collecting cases) *with* Doc. No. 26 at p.7 (merely stating that Hoyle could not have known if the officers were in fear).

What's more is that, even beyond his prior concessions, the video included at Doc. No. 10-1 presents an objective basis for concluding that Hoyle posed a safety threat. Again, Hoyle would have this Court hold that Officer Brown was supposed to forget that he had just been on a dangerous eight-minute pursuit and should have suddenly believed that Hoyle would now be compliant in exiting his vehicle, even after Hoyle – just moments before – had tried to come out of the ditch and struck the patrol cars. *Compare* Doc. No. 26 at p.28 (arguing that, "[a]fter

7

Hoyle's car was stopped, there was no immediate existing threat") (emphasis removed) *with* Doc. No. 10-1 (video of the incident in question). But again: the law requires consideration of the "totality of the circumstances," *see Shepherd*, 920 F.3d 278 at 286, not discrete events or Hoyle's after-the-fact assurances that he was finally ready to give up.

Underscoring the point is the Fifth Circuit's recent decision in *Tucker v. City of Shreveport*, 998 F.3d 165 (5th Cir. 2021). There, it was explained that the plaintiff's conduct must be "viewed in its entirety," including his "continued driving for a couple of minutes . . . rather than promptly stopping[.]" *See Tucker*, 998 F.3d at 178, 180. It ultimately was held that the defendant officer "could reasonably question whether [the plaintiff] might attempt to break away, fight being handcuffed, or even attempt to grab one of the officer's weapons." *Id*. at 180; *see also Dunn v. Nance*, 2009 WL 1956429, *6 (D. Idaho 2009) (explaining that "unrestrained suspects have an opportunity to 'hide, flee anew, to recover a weapon, to harm the dog, or to prepare to launch an ambush against the deputies'").

Plus, even under Hoyle's improper attempt to narrow the time frame of consideration, there was an objective basis for the officers to believe that Hoyle remained dangerous. After the car was stopped, Hoyle can be seen moving around in his vehicle and holding what appears to be a shiny object prior to emerging from the car. *See* Doc. No. 10-1 at 8:07-8:11. Officers could reasonably have believed that Hoyle was hiding a weapon. These events, especially when considered along with everything that occurred prior, are consistent with other decisions where it was held that a plaintiff posed an immediate threat. *E.g.*, *Johnson v. Scott*, 576 F.3d 658 (7th Cir. 2009); *Brady v. Scott*, 2010 WL 3946527 (N.D. Ind. 2010) (finding that, because the plaintiff could have been armed and dangerous and had led police on a high-speed chase endangering the lives of both police and bystanders, the police could not "divine his intent" when

he exited the vehicle and thus the officer's decision to use a police dog was reasonable); *Crenshaw v. Lister*, 556 F.3d 1283 (11th Cir. 2009).

This case stands in stark contrast to cases where courts have found that the plaintiff did not pose an immediate threat. Such examples include situations where a plaintiff was tased after being placed in handcuffs and where a canine was deployed against a person suspected of stealing $20 in snacks who had submitted immediately to the police, had laid down on the ground, and obviously posed no threat of harm. *E.g., Ramirez v. Martinez*, 716 F.3d 378, 379 (5th Cir. 2013); *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919 (11th Cir. 2000). Quite differently here, Officer Brown deployed his canine in an effort to detain Hoyle; he did not deploy the canine after Hoyle already was in custody.

The second factor unquestionably weighs in Officer Brown's favor.

Active Resistance or Evasion by Flight. It is undeniable that Hoyle evaded arrest for approximately eight minutes, taking Officer Brown on a dangerous high-speed chase that endangered many lives. *See generally* Doc. No. 10-1; Doc. No. 10-2 at pp.7-9. It also is undeniable that the chase ended only after Hoyle was boxed in and hit two police cars with his stolen vehicle. Doc. No. 10-1 at 7:58-8:08; Doc. No. 10-2 at pp.8-10. Hoyle would have this Court ignore his resistance and flight, but, again, that is not how the analysis works.

Put simply, an officer does not have to "take [an] apparent surrender at face value" if there are "uncertainties in the situation that faced him." *See Johnson*, 576 F.3d at 660-61. In *Tucker*, the Fifth Circuit made clear that, in determining what level of force is necessary, an officer is entitled to consider prior "red flag[s,]" such as "continued driving for a couple of minutes" after an attempted stop. 998 F.3d at 178-79. Past evasion "ostensibly raise[s] logical concerns about possible resistance and officer safety." *Id*. at 178. And here Hoyle admitted to

his continued resistance in his guilty plea. *See* Doc. No. 10-2 at p.9 ("The dog did engage the lower right leg of [Hoyle] as he continued to resist arrest.").

The third factor unquestionably weighs in Officer Brown's favor.

\*\*\*

On balance, these factors show that a reasonable officer on the scene "could have concluded" that using a police dog to apprehend Hoyle was constitutionally justified. *See, e.g., Guerra v. Bellino*, 703 F. App'x 312, 317 (5th Cir. 2017). The "could have" qualifier is important, for the question is not whether the dog was "actually" justified. *See, e.g., Nerio v. Evans*, 974 F.3d 571, 576 (5th Cir. 2020). "'[R]easonable mistakes by police officers . . . do not implicate the Fourth Amendment.'" *Id*.

The Supreme Court has long instructed that excessive force claims must be viewed from the dangerous, fast-pace circumstances that officers face in the heat of battle and not "with the 20/20 vision of hindsight" after the dust has settled. *See Graham*, 490 U.S. at 396. Or, as the Fifth Circuit recently put it, the "focus is on the officers' reasonable perception of the events at issue, as they happened, <u>without</u> the aid of hindsight, multiple viewing angles, slow motion, or the ability to pause, rewind, and zoom." *See Tucker*, 998 F.3d at 176 (emphasis in original). "[A] certain amount of force is obviously reasonable when a police officer arrests a dangerous, fleeing suspect." *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996).

Through this lens, Officer Brown's conduct was not unreasonable – especially considering that a police dog is a form of "non-deadly" force. *See Miller v. Clark Cty.*, 340 F.3d 959, 963 (9th Cir. 2003) ("We reiterate that the possibility that a properly trained police dog could kill a suspect under aberrant circumstances does not convert otherwise nondeadly force into deadly force."); *see also Gonzales v. City of Kerrville*, 205 F.3d 1337 (5th Cir. 1999) (acknowledging K-9 to be a "non-deadly option[ ]"). Use of such non-deadly force was justified

10

given Hoyle's dangerous criminal behavior. *See, e.g., Johnson*, 576 F.3d at 660 (finding no excessive force, and therefore not reaching the issue of qualified immunity, where an officer who pursued a fleeing suspect released his dog and, shortly after the suspect threw up his hands and said, "I give up," the dog bit and held him as the officer made the arrest; the officer also struck the suspect to subdue him because he interpreted the suspect's struggle with the dog as resistance).

**Qualified Immunity.** At minimum, Officer Brown is entitled to qualified immunity. The Supreme Court, in a pair of cases decided just last week, reiterated the importance of the doctrine in excessive force cases like this one. *See Rivas-Villegas v. Cortesluna*, __ S. Ct. __, 2021 WL 4822662 (Oct. 18, 2021) (reversing Ninth Circuit's denial of QI in excessive-force case); *City of Tahlequah v. Bond*, __ S. Ct. __, 2021 WL 4822664 (Oct. 18, 2021) (reversing Tenth Circuit's denial of QI in excessive-force case). Hoyle has not overcome <u>his burden</u> under either (1) the obvious exception or (2) the analogous-case requirements. *See* Doc. No. 13 at pp.10-11 (explaining the applicable QI framework).

<u>Obvious Exception.</u> Hoyle makes no real effort to demonstrate "obviousness," instead arguing that Officer Brown should not get qualified immunity because of a prior case. *See* Doc. No. 26 at p.8 (arguing that Officer Brown's conduct was "obviously unreasonable" because of "*Jacob Cooper v. Lynn Brown*[,] 844 F.3d 517 (5th Cir. 2017)"). Presumably the reason is because, as other courts in this Circuit have recently highlighted, "[t]he standard for obviousness is sky high" and can be met only "'in extreme circumstances[.]" *See Staten v. City of Dallas*, 2021 WL 3556671, *5 (N.D. Tex. 2021) (quoting *Joseph v. Bartlett*, 981 F.3d 319, 337 (5th Cir. 2020) and *Cope v. Cogdill*, 3 F. 4th 198, 206 (5th Cir. 2021)) (cleaned up).

This case does not qualify as "sky high" or "extreme." Indeed, the Supreme Court's most recent pronouncement on qualified immunity reiterates that excessive-force cases generally

cannot proceed under the obviousness exception. *See Rivas-Villegas*, 2021 WL 4822662 at *2 (explaining that specific prior case law "is especially important in the Fourth Amendment context"). Hoyle's ability to overcome Officer Brown's qualified-immunity defense rises and falls on the analogous-case requirement. *See Harmon v. City of Arlington*, ___ F.3d ___, Case No. 20-10830 at p.11 (5th Cir. Oct. 26, 2021) (highlighting that the obvious exception is "so rare that the Supreme Court has <u>never</u> identified one in the context of excessive force") (emphasis in original).

Analogous-Case Requirement. The case Hoyle relies on is *Cooper v. Brown*, 844 F.3d 517 (5th Cir. 2016), in which Officer Brown was the defendant in an excessive-force dog bite case while employed at the City of Horn Lake. But Hoyle has offered no authority to support the proposition that being a defendant in a prior case is enough to satisfy the analogous-case requirement. Indeed, if that were the law, Officer Brown would have to get out of law enforcement altogether. He of course has not been required to do so and instead remains certified by the State of Mississippi. Doc. No. 10-7.

To satisfy <u>his burden</u>, Hoyle "must identify a case" that is both authoritative <u>and</u> specific. *See Rivas-Villegas*, 2021 WL 4822662 at *2; *Carr v. Hoover*, 2018 WL 3636563, *8 (N.D. Miss. 2018) ("The second step, if the plaintiff had identified a specific case for consideration, is to determine if the case qualifies as 'clearly established law.' This determination requires the court to inquire whether the identified case is both 'authoritative' and 'specific.'") (affirmed on appeal). It is unclear that Hoyle is even relying on an "authoritative" case, and he certainly is not relying on a "specific" one.

*Authoritative Requirement.* In 2011, the Fifth Circuit identified three authoritative sources of clearly established law: (1) Supreme Court decisions, (2) Fifth Circuit decisions, or (3) "a robust consensus of persuasive authority[,]" i.e. decisions not from the Supreme Court or

the Fifth Circuit. *See Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011). But this articulation has become doubtful in recent years.

In 2018, the Supreme Court explained as follows: "We have not yet decided what precedents—other than our own—qualify as controlling authority for purposes of qualified immunity." *District of Columbia v. Wesby*, 138 S. Ct. 577, 591 n.8 (2018). Then, last week, the Supreme Court again was willing only to "assume" that Circuit precedent matters. *See Rivas-Villegas*, 2021 WL 4822662 at *2 ("Even assuming that controlling Circuit precedent clearly establishes law for purposes of § 1983, *LaLonde* did not give fair notice to Rivas-Villegas. He is thus entitled to qualified immunity.").[5]

The Fifth Circuit has taken notice of these statements by the Supreme Court. In the 2020 *Nerio* case, for example, the court articulated the "authoritativeness" requirement as follows: "Although we know the Supreme Court's decisions can clearly establish the law, the Supreme Court has never held that our decisions can do the same." *See* 974 F.3d at 576 n.2. These recent decisions undermine Hoyle's argument that *Cooper* even clears the hurdle of being authoritative.

*Specificity Requirement*. But it certainly is not "specific" enough, even if it is considered authoritative. The case a plaintiff proffers does not count as clearly established law unless it places "the constitutional question beyond debate." *See Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (quoting Supreme Court precedent). And the "beyond debate" standard is a "heavy" burden. *Id*. A proffered case must "squarely govern" the situation at issue, *id*. at 876, not just share "factual similarities" with a prior precedent. *See, e.g., Perry v. Durborow*, 892 F.3d 1116, 1126 (10th Cir. 2018).

---

[5] These written decisions are consistent with what the Justices having been suggesting orally for many years. *See, e.g.,* Oral Arg. Tr. at p.14 from *Lane v. Franks*, 573 U.S. 228 (2014) (noting that Chief Justice Roberts questioned counsel as follows: "You spend a fair amount of time in your brief talking about court of appeals decisions from other circuits. . . . Do you really think we should be looking at the opinions from other circuits in deciding whether the law was clearly established in a different circuit?").

13

The distinctions between this case and *Cooper* are many, including the following:

- Cooper was "not suspected of committing a violent offense" "or even a felony" while Hoyle pled guilty to a felony in which he admitted to "operat[ing] his motor vehicle in a reckless manner with willful disregard for the safety of persons or property or in a manner manifesting extreme indifference to the value of human life." *Compare Cooper*, 844 F.3d at 522 *with* Doc. No. 10-2. This difference is particularly relevant because, in *Cooper*, the court explained that, even though the officers could see Cooper's hands, it might have been reasonable to believe there was a weapon on his person since he had not yet been searched, <u>if he had been</u> "suspected of committing a violent crime[.]" *See* 844 F.3d at 523 n.2.

- Cooper fled on foot while Hoyle fled in a stolen car at a high rate of speed, drove erratically, passed vehicles, drove on the wrong side of the road, forced cars off of the road, nearly hit other cars, lost control and drove in a ditch, came out of the ditch and hit two police cars, and eventually stopped his evasion only when he was boxed in. *Compare Cooper*, 844 F.3d at 523 *with* Doc. No. 10-2 at p.7-10.

- Officer Brown "knew [Cooper] had no weapon" and "there was no evidence that would have led a reasonable officer to believe that Cooper was a threat" while Hoyle admitted as part of his plea deal that "the officers deployed a K9 to apprehend the suspect fearing [Hoyle] may have a weapon." *Compare Cooper*, 844 F.3d at 521 *with* Doc. Nos. 10-1 and 10-2.

- Cooper complied with all of Brown's orders except the order to show his hands, which, at the time, were trying to stop the dog bite. Hoyle, on the other hand, repeatedly failed to submit to the officers during the eight-minute car chase and continued to resist arrest once outside of the car. *Compare Cooper*, 844 F.3d at 523 *with* Doc. Nos. 10-1 and 10-2.

- The injury sustained by Cooper was significantly worse than the injury sustained by Hoyle. *Compare* Cooper's injuries (*Cooper v. Brown*, No. 3:14-cv-00091-MPM-RP at Doc. No. 47-8 and reproduced below) with Hoyle's injuries (Doc. No. 10-6 and reproduced below). Due to the severity of the bite, the court required that Officer Brown make a "greater showing of necessity" in order for the force to be considered reasonable. *Cooper v. Brown*, 156 F. Supp. 3d 818, 823 (N.D. Miss. 2016).



Such distinctions have been relied on in other cases, with courts specifically holding that *Cooper* <u>did not</u> constitute clearly established law. The most recent Fifth Circuit example is *Valencia v. Davis*, 836 F. App'x 292, 298 (5th Cir. 2020), where the court pointed out that *Cooper* involved a non-violent crime and the officer knew the plaintiff had no weapon while the officer in *Valencia* "was aware that Valencia had been involved in a bar fight and had been informed that he was possibly armed." These differences were sufficient to hold that "*Cooper* d[id] not clearly establish a constitutional violation[.]" *See Valencia*, 836 F. App'x at 298. Likewise, even before *Valencia*, the Fifth Circuit rejected *Cooper* as clearly established law in *Shumpert v. City of Tupelo*, 905 F.3d 310, 323 (5th Cir. 2018). *Shumpert* too distinguished *Cooper* on the ground that the officer "did not know whether [the suspect] was armed[.]" *See* 905 F.3d at 323. And courts outside the Fifth Circuit are in agreement that *Cooper* does not "squarely govern" dog-bite cases generally. *See, e.g., Barker v. Gaylor*, 2021 WL 3354161, *8 (S.D. W.V. Aug. 2, 2021) ("*Cooper* bears little similarity to plaintiff's case and cannot be said to put the question of excessiveness of the use of force in this case beyond question.").

Indeed, *Cooper* itself noted that it was based on "<u>facts specific to this case</u> which render Brown's actions more unreasonable than simply employing his dog against a suspect, and the extreme nature of these facts distinguish this case from more typical cases involving dog 'holds' upon suspects." *See* 156 F. Supp. 3d at 826 (emphasis added); *see also Escobar v. Montee*, 895 F.3d 387, 394-95 (5th Cir. 2018) ("Even [in *Cooper*], we cautioned that 'we do not say that *any* application of force to a compliant arrestee is *per se* unreasonable.' And we explicitly declined to 'opine on the line of reasonableness'—with good reason, as the present case reveals." (cleaned up) (quoting *Cooper*, 844 F.3d at 524)).

It also cannot be forgotten that *Cooper* was decided in 2016. In a case decided earlier this year, the Fifth Circuit was dubious of an older precedent alleged to "clearly establish" the

law, since it "preceded a series of Supreme Court decisions demanding a high degree of specificity and the identification of an analogous case to overcome qualified immunity." *See Cope*, 3 F.4th at 205 n.4. So it is here with the *Cooper* case when compared to the Supreme Court's recent qualified immunity pronouncements.

Ultimately, Hoyle cannot overcome the "heavy burden" of qualified immunity. *See Morrow*, 917 F.3d at 874. Although Hoyle claims that Officer Brown should never have pursued Hoyle and that Officer Brown could have arrested him without use of the dog, neither of these arguments can win the day. *See* Doc. No. 26 at p.4. "[I]mmunity may be sustained even when officers act negligently, or when they could have used another method to subdue a suspect, or when they created the dangerous confrontation, or when the law governing their behavior in particular circumstances is unclear." *Mason v. Faul*, 929 F.3d 762, 763 (5th Cir. 2019).

\* \* \* \*

The constitutional question in this case is not close, but, to the extent narrower grounds are preferred, qualified immunity offers an alternative ground for decision. Hoyle has not met his burden of overcoming the "powerful" doctrine of qualified immunity. *See Jordan v. Brumfield*, 687 F. App'x 408, 412 (5th Cir. 2017). In particular, he has satisfied neither the obvious exception nor the analogous-case requirement.

### III.     Hoyle improperly attempts to invoke a "duration" theory into this case, but it is meritless in any event.

In his response, Hoyle seemingly raises for the first time a claim that the duration of Groot's bite was also unconstitutional. *See* Doc. No. 26 at p.20 ("The case law is clear that an officer cannot direct or allow a police dog to continue biting a suspect who has fully surrendered and is under the officer's control.").[6] But this claim was raised nowhere in the complaint with

---

[6] A claim that an officer unconstitutionally allowed a K-9 to continue biting a suspect after the threat had dissipated is a separate claim from the constitutionality of the initiation of a bite. *See Escobar v. Montee*, 2016 WL

the complaint instead focusing on the initial bite, i.e. the use of the K-9 to gain compliance to begin with. *See* Doc. No. 8 at ¶¶26-27 (claiming that Brown knew "that engaging in the unjustified use of the police K-9 animal to savagely attack Hoyle was likely to cause severe injury and/or death" and that Officer Brown could not have believed "that the deployment of the K-9 animal was warranted and/or necessary"). The complaint says nothing about the duration of the bite and seemingly admits that the bite was relatively short. *See* Doc. No. 8 at ¶8. Claims and allegations that are not raised in the complaint, but rather are raised for the first time in a response to a dispositive motion, are not properly before the court. *See Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990); *Cutrera v. Bd. of Supervisors*, 429 F.3d 108, 113 (5th Cir. 2005).

Even if Hoyle had properly asserted this claim, however, it does not pass muster. It is true that force must be reduced if it is clear that the suspect no longer poses an immediate threat of harm and is not actively resisting or evading arrest. *Escobar*, 2016 WL 397087, at *8. But the relevant question is whether it was objectively reasonable for Officer Brown to question the sincerity of Hoyle's surrender and to believe that he may have been armed and dangerous or may have attempted to flee again. Hoyle admitted as part of his plea deal that the officers believed that he could be armed and that the K-9 "engage[d] the lower right leg of [Hoyle] <u>as he continued to resist arrest</u>." Doc. No. 10-2 at p.9 (emphasis added). Due to Officer Brown's legitimate fear that Hoyle could be armed and Hoyle's active resistance, he "would have been placing himself at risk had he called off the canine before ensuring that [Hoyle] was fully secured." *Crenshaw*, 556 F.3d at 1293.

---

397087, *8 (N.D. Tex. 2016) ("[E]ven where deploying a dog to bite and hold a suspect is reasonable, an officer may use excessive force by allowing the dog to continue biting and holding a suspect who has ceased to pose a threat to fight or flee." (quoted case omitted).

Even if Hoyle were not actively resisting, though, Officer Brown still "was not required to call off the dog until [Hoyle] was secured because he 'had no reason to trust that [Hoyle] would not suddenly attempt to do him harm.'" *Escobar*, 895 F.3d at 395. This fact distinguishes this case from *Cooper* and other cases cited by Hoyle because, in *Cooper*, there was no "reason to doubt the suspect's compliance and still perceive a threat" and, at a minimum, guarantees that Officer Brown is entitled to qualified immunity. *Id.* at 395 (distinguishing *Cooper* and other excessive force cases).

## IV. The City cannot be held liable.

Hoyle's case against the City is a non-starter, since he has not shown that Officer Brown violated the Constitution. Indeed, "[w]ithout an underlying constitutional violation, an essential element of municipal liability is missing." *Doe ex rel, Magee v. Covington County School Dist. ex rel. Magee*, 675 F.3d 849, 867 (5th Cir. 2012). But even if Hoyle could establish a violation of the Fourth Amendment, he cannot demonstrate the additional requirements necessary for municipal liability. He hints at (1) unofficial custom, (2) single incident, and (3) failure-to-train/negligent hiring theories, but none of them work on these facts.

**Unofficial Custom.** To the extent Hoyle relies on this theory of municipal liability, he does not come close to meeting the governing standard. The "demanding" unofficial custom theory requires that a plaintiff identify "sufficiently numerous prior incidents" and those prior incidents must be both "similar" and "specific" to the alleged violation in question. *See Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850-51 (5th Cir. 2009). Pointing to one prior incident, particularly Officer Brown's conduct at a <u>different</u> police department, is of course insufficient to establish the "high bar to prove an official custom[.]" *See Pena Arita v. United States*, 470 F. Supp. 3d 663, 706 (S.D. Tex. 2020); *see also Pineda v. City of Houston*, 291 F.3d 325, 329 (5th

Cir. 2002) ("Eleven incidents each ultimately offering equivocal evidence of compliance with the Fourth Amendment cannot support a pattern of illegality[.]").

**Single-Incident Exception.** Hoyle misapprehends the single-incident theory. He suggests that Chief Worsham hired Officer Brown and that, accordingly, the City could be held liable if Chief Worsham is a "final policymaker." *See* Doc. No. 26 at p.15-18. But that contention confuses the single-incident theory with a negligent-hiring theory. Under the single-incident theory, the final policymaker must be directly involved in the alleged unconstitutional act, i.e. the supposed use of excessive force. *See Gonzales v. Westbrook*, 118 F. Supp. 2d 728, 739 (W.D. Tex. 2000) (rejecting single-incident theory because "[t]here [wa]s no evidence the Attorney General of the State of Texas or another final policymaker such as the Sheriff was directly involved in the minor Gonzales' arrest"); *see also Aubrey v. D Magazine Partners, L.P.*, 2020 WL 1469955, *9 (N.D. Tex. 2020) ("Given that Plaintiffs have not sufficiently alleged that their single incident involved an official policymaker, Plaintiffs' attempt to invoke the single-incident exception fails."). Chief Worsham is not a final policymaker under Mississippi law, but, even if he was, Hoyle's single-incident theory fails because Chief Worsham was nowhere near Hoyle at the time he was detained by the dog. *See Harris v. Jackson Cty., Miss.*, 684 F. App'x 459, 463 (5th Cir. 2017) (calling the single-incident theory an "extremely narrow" exception); *see also Peterson*, 588 F.3d at 847 ("A municipality is almost never liable for an isolated unconstitutional act on the part of an employee[.]").

**Failure-to-Train/Negligent Hiring.** Hoyle argues that the City is liable for Officer Brown's alleged excessive force under a negligent hiring, training, supervision, or retention theory. But such a theory falls flat since a "§ 1983 claim . . . cannot be based upon mere negligence." *See LCS Corrections Services, Inc. v. Lexington Ins. Co.*, 800 F.3d 664, 672 n.8

19

(5th Cir. 2015). To reiterate: an unconstitutional policy or custom is required. *See Peterson*, 588 F.3d at 847.

Hoyle does not identify an express policy that he believes is unconstitutional, and it already has been explained that he has not identified a widespread pattern of specific and similar instances that could give rise to an unofficial municipal custom. *Id*. at 850-51. The theory, again, is related to hiring, supervision, training, and retention.

The Fifth Circuit has explained that such attacks may be analyzed together, since all require deliberate indifference on the part of a final policymaker. *See, e.g., Brown v. Callahan*, 623 F.3d 249, 253-54 (5th Cir. 2010). And, in addition to deliberate indifference on the part of a final policymaker, a plaintiff must demonstrate a causal link between the deliberate indifference and the specific injury in question. *Id*. at 254. Hoyle cannot satisfy any of these requirements, much less all of them.

*Final Policymaker*. It is Hoyle's burden to prove the identity of the final policymaker. *See Sullivan v. Chastain*, 2005 WL 984348, *6 (W.D. Tex. 2005) ("The burden is on Plaintiff to establish the identity of the final policymaker on the part of the local governmental unit."). He claims it is Chief Worsham, but that is wrong. In Mississippi, the Board of Alderman—not the police chief—is the final policymaker. *See, e.g., Sockwell v. Calhoun City*, 2019 WL 3558173, *2-3 (N.D. Miss. 2019).

"[T]he identity of the policymaker is a question of law, not of fact—specifically, a question of state law." *Groden v. City of Dall., Tex.*, 826 F.3d 280, 284 (5th Cir. 2016). Policymakers are determined by state statutes, not subjective opinions. *See, e.g., Hinojosa v. Tarrant Cty.*, 2009 WL 1309218, *8 (N.D. Tex. 2009) ("As *Beattie* explained, an official may be a policymaker . . . only when so authorized by state statute[.]").

20

Mississippi Code § 21-19-15(1) expressly provides that "[t]he governing authorities of municipalities shall have the power to make all needful police regulations necessary for the preservation of good order and peace of the municipality[.]" And the "governing authority," as used in § 21-19-15(1), is the City's Board. *See, e.g.*, MS A.G. Op., Whitehead, 2011 WL 4383398 (Aug. 12, 2011) ("When a specific statute authorizes 'governing authorities' to act, it means that the board of aldermen acts subject to the mayor's veto."). Only the Board has hiring and firing authority under Mississippi law. *See* MS A.G. Op., Wakham, 1987 WL 121405 (Feb. 9, 1987); *see also* Miss. Code §§ 21-3-3, 21-3-5, and 21-3-15.

On multiple occasions, the Fifth Circuit has held that police chiefs are <u>not</u> final policymakers. *See Reyes v. City of Plainview*, 362 F. App'x 423, 425 (5th Cir. 2010) ("The Ceballos Family has failed to produce summary judgment evidence that Police Chief Mull – the only alleged policymaker identified – was an official policymaker for the City. His acknowledgment of responsibility for his department does not convert him into the City's policymaker."); *Love v. King*, 784 F.2d 708, 710-11 (5th Cir. 1986) (explaining that the police chief's conduct was not attributable to the town because the Board of Aldermen was the final policymaker). And district court decisions in Mississippi hold the same thing. *See, e.g., Sockwell*, 2019 WL 3558173, *2-3 (N.D. Miss. 2019); *Riggins v. City of Indianola, Miss.*, 196 F. Supp. 3d 681, 691-92 (N.D. Miss. 2016) (holding that plaintiff did not establish police chief was final policymaker for City of Indianola); *Smith v. City of Wiggins*, 2015 WL 6872230, *9 (S.D. Miss. 2015) (holding that police chief was not final policymaker for the City of Wiggins); *Bryant ex rel. Bryant v. City of Ripley, Miss.*, 2015 WL 686032, *6 (N.D. Miss. 2015) (holding that the

city's board of aldermen, not the mayor or police chief, was the City of Ripley's final policymaker).[7]

Undoubtedly, Chief Worsham has decision-making authority regarding day-to-day police matters. But "decision-making" authority and "final policymaking" authority are distinct. *See Bolton v. City of Dallas*, 541 F.3d 545, 548-49 (5th Cir. 2008) (explaining that "the difference between final decisionmaking authority and final policymaking authority" is "fundamental"). Only the latter can give rise to municipal liability against the City while the former cannot. *Id*. at 551.

Judge Posner utilized a helpful example in *Gernetzke v. Kenosha Unified Sch. Distr. No. 1*, 274 F.3d 464 (7th Cir. 2001) to illustrate the rationale behind the decision-making versus "final policymaking" distinction. He explained that, when a policeman makes an unlawful arrest, the authority that the policeman utilizes "is 'final' in the practical sense that he doesn't have to consult anyone before making an arrest[,]" i.e. the Board. *See Gernetzke*, 274 F.3d at 469. Nonetheless, the officer's conduct is not "final" in the sense that the Supreme Court has used the word because, if it were, that would mean a retreat "back in the world of respondeat superior." *Id*. To avoid a "collapse [between] direct and derivative liability[,]" the Supreme Court has "limit[ed] municipal liability under section 1983 to situations in which the official who commits the alleged violation of the plaintiff's rights has authority that is final in the special sense that there is no higher authority." *Id*. (emphasis added).

Chief Worsham simply is not a final policymaker because his conduct always remains reviewable by the Board, as acknowledged by state statute. Whether it was reviewed as a factual matter is irrelevant because all that matters is that it was subject to review if the Board so desired. *See Advanced Technology Bldg. Solutions, L.L.C. v. City of Jackson, Miss.*, 817 F.3d

---

[7] Movants acknowledge that there are some district court decisions that go the other way, but they do so with little analysis and in contravention to Fifth Circuit precedent.

163, 167 (5th Cir. 2016) ("[I]n multiple cases, we have affirmed that officials are not final policymakers when a supervisory board has the authority to accept or reject their decisions." Given that there is no argument articulating what the City's board supposedly did wrong, there can be no municipal liability. *See, e.g., Higginbotham v. City of Louisville*, 2019 WL 4934949, *2 (N.D. Miss. 2019) (quoting Fifth Circuit precedent for the rule that "[t]he description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts").

*Deliberate Indifference.* Hoyle also has to show that the final policymaker was deliberately indifferent, deliberate indifference being "an extremely high standard" that requires a "stringent" level of culpability. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011); *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). In all but extraordinary cases, there must be evidence of "a pattern of similar incidents" that would provide notice that supervision or training is constitutionally deficient. *See Sanders-Burns v. City of Plano*, 594 F.3d 366, 382 (5th Cir. 2010).

The City is automatically insulated from liability, since Officer Brown is a certified law enforcement officer. It has long been "held that[,] if the training of police officers meets state standards, there can be no cause of action for a failure to train absent a showing that 'this legal minimum of training was inadequate to enable [the officers] to deal with the 'usual and recurring situations' faced by jailers and peace officers.'" *See O'Neal v. City of San Antonio*, 344 F. App'x 885, 888 (5th Cir. 2009). Hoyle totally ignores this established rule.

But even if Officer Brown were not certified, Hoyle has not shown any similar incidents that could satisfy the deliberate indifference standard. *See Sanders-Burns*, 594 F.3d at 382. At page 18 of his response, he acknowledges that this is the general rule.

Hoyle attempts to avoid the pattern-of-similar-incidents requirement, but it is undeniable that a prior pattern of similar incidents is "ordinarily necessary" to succeed on a failure-to-train theory. *See Bd. of Bryan Cty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997). The single-incident exception is derived from a footnoted hypothetical in *City of Canton v. Harris*, 489 U.S. 378, 380 (1989), but the Supreme Court drastically weakened the exception when it decided *Connick*. *See* 563 U.S. at 71-72. Highlighting the "narrow[ness]" of the exception, the Court did not even refer to it as a certain exception to the proof-by-pattern method – it called it "a possible exception[.]" *Id*. at 72.

The possible exception does not apply in this case for several reasons.

For starters, the single-incident theory "is generally reserved for those cases in which the government actor was provided no training whatsoever." *Pena v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018). But again: Officer Brown is certified by Mississippi's Law Enforcement Training Academy. Courts have long held that Mississippi's police academy includes sufficient training to defeat a failure-to-train theory. *See, e.g., Estate of Pernell v. City of Columbus*, 2010 WL 1737638, *6 (N.D. Miss. 2010) (rejecting denial-of-medical-care claim based on failure to train, where "both Officers attended and graduated from the Mississippi law enforcement academy and [were] certified law enforcement officers").

What's more is that, even if Officer Brown had received no training at all, Hoyle still "must prove that the highly predictable consequence of a failure to train would result in the specific injury" at issue. *Hutcheson v. Dallas Cty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021) (emphasis added; quoted case omitted). In *Canton*, the example provided was a municipality who provides its police officers with firearms but then gives no training on the use of deadly force. *See* 489 U.S. at 390 n.10. But that example does not translate here. Officer Brown is

highly trained in the use of his K-9 and deployed it only after Hoyle stole a car and took Officer Brown on a high-speed pursuit.

And even if Hoyle could posture his "specific injury" as "obvious," that presents a different obstacle. In *Anderson v. Marshall County, Mississippi*, 637 F. App'x 127 (5th Cir. 2016), the Fifth Circuit reminded that failure-to-train liability turns on whether the governmental entity should be held responsible, not whether its employees did something wrong. It was explained that the governmental entity "could not have anticipated that [its] correctional officers would ignore . . . obvious aliments." *Id*. at 135. Obvious medical problems are things that officers should know to seek help for "even without additional training." *Id*. Like the governmental entity in *Anderson*, the City here would have "had no reason to predict that [its officers] required specialized training to reach this basic threshold." *Id*.

Finally there is the problem of causation, which the Supreme Court has called "rigorous" in this context. *See Brown*, 520 U.S. at 415. There are no allegations or proof that a lack of training or supervision is what led to Hoyle being bitten by the dog. *See, e.g., Justiniano v. Walker*, 986 F.3d 11, 23 (1st Cir. 2021) (explaining that speculative inferences are not enough). "Proving that an injury or accident <u>could have been avoided</u> if an employee had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct[,] will not suffice." *Connick*, 563 U.S. at 68 (emphasis added).

\* \* \* \*

Ultimately, there is no basis to hold the City liable. Hoyle has not even demonstrated a constitutional violation, much less advanced a cognizable theory of municipal liability.

## V. Hoyle's numerous attacks are baseless.

Hoyle makes a litany of allegations and attacks that are unsupported and demonstrably wrong. Indeed, throughout his brief, Hoyle alleges "facts" with no citation to the record or legal

25

authority.  *See Skyline Corp. v. Nat'l Labor Relations Bd.*, 613 F.2d 1328, 1337 (5th Cir. 1980)

("Statements by counsel in briefs are not evidence.").  What follows are simply a few of the

more blatant examples:

- Undersigned counsel did not "urg[e] this Court" to sanction Hoyle and his counsel.  *See* Doc. No. 26 at p.2.  That would require a separate motion and compliance with Rule 11's 21-day safe harbor period.  Neither have been invoked.  The point of the opening brief was that courts have said parties should not omit material facts like Hoyle's complaint did.

- Hoyle says that "[w]hat preceded Brown and Solomon's attack on a surrendered suspect really bears little relevance," *see* Doc. No. 26 at p.2, but the movants have explained why that is false. Hoyle's criminal conduct categorically bars his state-law claims and is highly relevant to the *Graham* factors that govern the federal claim.

- Nowhere in the opening brief did the movants say that Officer Brown "was chasing a stolen car <u>because</u> the car was stolen."  *See* Doc. No. 26 at p.2 (emphasis in original). The very first line of the factual background section says clearly that the chase began when "Officer Brown observed a blue Chevrolet Malibu run a red light at a high rate of speed."  *See* Doc. No. 13 at p.2.

- This brief explains *Heck*'s application to excessive-force claims, which proves false Hoyle's statement that "[t]he guilt or innocence of Adrian Hoyle has no bearing whatsoever on Hoyle's claim for excessive force in the arrest."  *See* Doc. No. 26 at p.2 n.1.

- There is no evidence to support Hoyle's claim that Officer Brown engaged in a "pretextual misdemeanor stop" of Hoyle.  *See* Doc. No. 26 at p.2.  Officer Brown had no idea who Hoyle was until he ran the red light that he admitted he ran at his guilty plea.

- Hoyle provides no support for his claim that Officer Brown violated Hernando's pursuit policy, but, even if there were a violation of internal policy, that is irrelevant to the constitutional standard.  *See Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 579 (5th Cir. 2009) ("[T]he fact that Knoblauch acted contrary to his supervisor's order is constitutionally irrelevant.").

- Hoyle repeatedly says that Officer Brown should not have pursued Hoyle over a misdemeanor.  *See, e.g.,* Doc. No. 26 at p.3.  This plainly ignores that, when Hoyle did not immediately stop, the crime graduated to the felony he pled guilty to.

- Hoyle criticizes undersigned counsel for stating that Hoyle used his stolen vehicle to hit the patrol car's of the officers.  *See* Doc. No. 26 at p.4.  But this criticism is unwarranted, given that undersigned counsel merely was pointing out that what Hoyle said in the complaint about the officers hitting him was not true.

26

- Hoyle provides no support for his claim that Officer Solomon and other officers surrounded Hoyle with their guns drawn and that Officer Solomon's holstering of his weapon "obviously signif[ied there was] no need for deadly force or the threat of force." Doc. No. 26 at pp.5, 6, 28. None of these facts are alleged in the complaint, in Hoyle's affidavit, or supported by the video.

- Hoyle claims that Officer Brown is "bound" by a statement made in his briefing in *Cooper*. Doc. No. 26 at pp.8-9. This is wrong for several reasons. First, this statement is taken out of context and does not translate to the facts involved in this case. Second, estoppel does not apply because two essential elements of estoppel are missing: (1) the party must have taken a <u>plainly inconsistent</u> position and (2) the prior court must have <u>accepted</u> that position. *See Jethroe v. Omnova Sols., Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) (cited case omitted). The statement in the Cooper brief was neither "plainly inconsistent" with the arguments submitted in this case, nor, as Hoyle has pointed out, was it accepted by the court in *Cooper*. The only facts accepted in a different proceedings are the ones Hoyle conceded to garner a plea deal.

## VI. Discovery is improper, unnecessary, and would contravene governing precedent.

In the last paragraph of the oppositional response, Hoyle makes a conclusory request that this Court lift the automatic stay that is in place under Local Rule 16(b)(3)(B) and "reserve" ruling "until after full and robust discovery is permitted[.]" *See* Doc. No. 26 at p.30. This request is procedurally and substantively improper.

With respect to procedure, parties are not permitted to make such requests within an oppositional response. Instead, Local Rule 7(b)(2) requires a separate motion. Mississippi District courts frequently deny such requests for this reason alone. *See, e.g., Hope v. Bryant*, 2016 WL 380128, *4 (S.D. Miss. 2016).

With respect to substance, the request is meritless in any event. Since the defendants have raised immunity defenses, discovery is not appropriate. It is well established that qualified immunity is not just a defense to liability; it is a defense to the burdens of litigation as well. *See Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009). Indeed, "[o]ne of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

27

Given the policy of protecting governmental officials, the Fifth Circuit has developed a "careful procedure" that trial courts <u>must</u> employ when considering discovery requests. *Id*. at 648-49. Under the procedure, two findings are required before discovery will be permitted. *Id*. First, the court must find that the complaint asserts facts that, if true, would defeat the qualified immunity motion. *Id*. Second, the court must additionally find that it is unable to rule on the immunity motion without allowing narrowly tailored immunity discovery. *Id*. The Fifth Circuit has reversed through interlocutory appeal for failing to "follow[ ] the procedures laid out in *Backe*[.]" *See, e.g., Patel v. Tex. Tech. U.*, 727 F. App'x 94, 95 (5th Cir. 2018).

Tellingly, Hoyle's "request" does not mention, much less grapple with, the "careful procedure" articulated by the Fifth Circuit. This failure should prevent the request from being considered. By way of example, a court recently denied immunity-related discovery in similar circumstances. *See, e.g., Woolum v. City of Dallas*, 2019 WL 6619320 (N.D. Tex. Dec. 5, 2019). In *Woolum*, the plaintiff attached written discovery but "(1) [did] not explain[ ] why those requests [were] necessary to enable him to respond to the qualified-immunity issues raised in the motion for summary judgment; (2) [did] not identif[y] the questions of fact that the discovery should be narrowly tailored to address; and (3) [did] not recount[ ] for the Court how his factual allegations overcome qualified immunity." *Id*. at *3. Hoyle's "request" should suffer the same fate as the plaintiff's request in *Woolum*.

Suffice it to say that the pending dispositive motion explains why the movants are entitled to dismissal without the need for any discovery. Perhaps most notably, there is a video of the events in question that cannot be contradicted. *See* Doc. No. 13 at p.9 (collecting cases). No amount of discovery could overcome the purely legal grounds that support judgment as a matter of law.

## CONCLUSION

For the reasons reiterated here and explained in the opening brief, all claims and defendants should be dismissed under Rule 12(c) or, alternatively, under Rule 56.

Dated: October 28, 2021.

**RESPECTFULLY SUBMITTED,**

**PHELPS DUNBAR, LLP**

BY:     */s/ G. Todd Butler*
         G. Todd Butler, MB #102907
         Mallory K. Bland, MB #105665
         4270 I-55 North
         Jackson, Mississippi  39211-6391
         Post Office Box 16114
         Jackson, Mississippi  39236-6114
         Telephone: (601) 352-2300
         Telecopier: (601) 360-9777
         Email:  butlert@phelps.com
                  blandm@phelps.com

         **ATTORNEYS FOR MUNICIPAL
         DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on October 28, 2021, I had a copy of this document electronically filed with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to all counsel of record.

*/s/ G. Todd Butler*
G. TODD BUTLER