IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**ADRIAN HOYLE**                                                                                          **PLAINTIFF**

**VS.**                                        **CIVIL ACTION NO.: 3:21-cv-00171-NBB-RP**

**CITY OF HERNANDO,
MISSISSIPPI, ET AL.**                                                               **DEFENDANTS**

## MUNICIPAL DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

This motion should not be necessary given the existence of Mississippi Rule of Professional Conduct 3.6. Unfortunately, however, recent events prove that it is. On November 9, 2021, Plaintiff Adrian Hoyle's counsel held a press conference that began by calling a party opponent a "cancer." *See* Press Conference Video, Ex. A (conventionally filed); Press Conference Transcript, Doc. No. 42-1 at p.3. Things quickly went downhill from there, with Hoyle's counsel repeatedly commenting on Defendant Officer Lynn Brown's character, suggesting that he had and would engage in criminal misconduct, accusing Defendant the City of Hernando of destroying evidence, and forthrightly acknowledging that their mission was "to cast a big spotlight" and "make this so expensive" that things are done differently moving forward. *Id.* A protective order should be entered prohibiting further efforts to prejudice this case through extrajudicial statements.

### RELEVANT BACKGROUND

Defendants Brown and the City of Hernando are defending two lawsuits by Hoyle's counsel. *See Hoyle v. City of Hernando* et al., Civil Action No. 3:21-cv-171-NBB-RP (N.D. Miss.) (filed July 30, 2021); *White v. City of Hernando et al.*, Civil Action No. 3:21-cv-162-SA-JMV (N.D. Miss.) (filed July 26, 2021). Both involve a car theft and subsequent high-speed pursuit. *Id.*

After the lawsuits were filed, Hoyle's counsel was quoted in the Desoto Times as saying, "We won't be commenting on active litigation unless Hernando chooses to[.]" *See* Article, Ex. B. Presumably the quote was given because of the well-known rule governing lawyer statements in the media. *See* MISS. R. PROF. CONDUCT 3.6.

Municipal Defendants filed dispositive motions in both cases. *See* Doc. No. 13; *White*, Civil Action No. 3:21-cv-162-SA-JMV at Doc. No. 13. The briefing offers a detailed analysis of why neither Officer Brown nor the City may be held civilly liable. *Id*. Hoyle's counsel took exception to Municipal Defendants' argument that Hoyle had omitted material details from his complaint, responding that it was Municipal Defendants who had not accurately described the incident in question. *See* Doc. No. 26 at pp.1-8; *see also* Press Conference Transcript, Doc. No. 42-1 at pp.6, 16, 20-21. Municipal Defendants replied by asking the Court to review the video capturing the incident as well as Hoyle's guilty plea transcript instead of relying on descriptions from counsel. *See* Doc. No. 38 at p.1.

Following full briefing, Hoyle's strategy changed. Undersigned counsel was notified that someone lodged a civil rights complaint and that a FBI agent had been assigned to request interviews of certain Hernando officers, including Brown. Hoyle's counsel subsequently held a lengthy press conference, which included the following statements:

- Hoyle's counsel called Officer Brown a "cancer" of the police department that the City has refused to rid itself of. *See* Press Conference Transcript, Doc. No. 42-1 at p.3. Hoyle's counsel later called Officer Brown an officer that "is harmful to the community" that is "not protecting" but "hurting." *Id*. at 24. "[D]o we want kids that play on the playground and help other people to become cops or do we want the bullies to become the cops?" *Id*. at pp.7-8.

- After announcing that the FBI was conducting an investigation, Hoyle's counsel stated that he "kn[ew] nothing about the FBI deciding to open up a case[,]" *id*. at p.4, yet later predicts guilt by stating, "the real justice may come from the department of justice with the FBI investigation, and that may be where we end up in terms of how this ends because it's very clear to us that the City of Hernando, Scott Worsham and the Hernando Police Department are not going to take any disciplinary action against this officer, none." *Id*. at pp.24-25.

2

- Hoyle's counsel suggests that Officer Brown will engage in criminal witness tampering, stating "I'm very surprised that he is on duty. I'm very surprised that he has access to witnesses and he has the ability to influence perhaps those witnesses in some kind of way, through intimidation or suggestion." *Id*. at p.25. "[D]on't let him further muddy an already completely botched investigation and further encourage the destruction of evidence and coverup." *Id*. at p.26.

- Hoyle's counsel played the video that is before this Court at Doc. No. 10-1 but skipped over the portion that shows Hoyle driving erratically, passing cars at a high rate of speed, driving on the wrong side of the road, forcing vehicles off of the road, and ultimately hitting two vehicles before stopping. *Id*. at pp.9-10. Instead, Hoyle's counsel focuses on the deployment of the dog to detain Hoyle. *Id*.

- Despite Hoyle admitting at his guilty plea that Officer Brown observed him run a red light prior to taking Officer Brown on a vehicular pursuit, *see* Doc. No. 10-2 at p.8, Hoyle's counsel suggested that Officer Brown did not actually witness Hoyle run a red light, stating that "I think Lynn Brown has X-ray vision." *See* Press Conference Transcript, Doc. No. 42-1 at p.9.

- Hoyle's counsel states that Municipal Defendants are engaged in a "coverup." *Id*. at p.13.

- Hoyle's counsel stated that Municipal Defendants have "destroyed" evidence, *id*. at pp.14-15, despite undersigned counsel having made efforts prior to the press conference to determine what Hoyle's counsel believes has been destroyed. *See* E-mails Between Counsel, Ex. C.

- Hoyle's counsel claims, without ever having produced any evidence in support, that Officer Brown "took photographs on his personal phone of [ ] deceased young men and made jokes about them" regarding "the color of their skin." *See* Press Conference Transcript, Doc. No. 42-1 at p.9.

- Hoyle's counsel claims that he "do[es] a lot of civil rights litigation" and suggests that this case is unique because undersigned counsel is representing both Officer Brown and the City. *Id*. at p.16. He then claims that, although "[w]e know there is something wrong[,]" the City has said, "there is nothing wrong" and "we're ok with it[.]" *Id*.

- Hoyle's counsel questions, "[W]hat else this police department condoned by this officer or Officer Solomon or other officers and refused to acknowledge it and rather embrace[d] the bad behavior[?]" *Id*. at p.17.

- Hoyle's counsel claims that both cases involve "completely minor incidents[,]" *id*. at p.18, despite Hoyle having pled guilty to felony fleeing and despite cases having long acknowledged how serious running from law enforcement is. *See* Doc. No. 38 at pp.4-5.

3

- Hoyle's counsel embraces the media attention, stating "we want to cast a big spotlight on what's happening down there[.]" *See* Press Conference Transcript, Doc. No. 42-1 at p.18.

- Hoyle's counsel states that they are "not doing this for the money[,]" *id*. at p.8, but later states that their lawsuits are for "10 and 12 million [dollars] respectively." *Id*. at p.24.

- Hoyle's counsel states, we want to "make this so expensive for the city that they" "do the right things from now on because they don't want to lose their budget." *Id*.

Two days after the presser, Hoyle's counsel e-mailed Municipal Defendants' counsel and stated that "the ability for the City to resolve these claims presents itself now as an opportunity that will no longer be available to the City as discovery progresses and our clients [are] more resolved towards trial." *See* 11/11/2021 E-mail, Ex. D.[1] It further warned Municipal Defendants' counsel that "[i]t may be time for you to speak with the mayor and the city aldermen about a more realistic awareness of the serious nature of the potential damages to the City and it's [p]olice department and ask for candor in their actions and how to minimize loss, both financially and in reputation." *Id*. (emphasis added). Municipal Defendants' counsel did not respond, choosing instead to stand behind the legal arguments pending before the Court.

## LEGAL ARGUMENT

Rule of Professional Conduct 3.6 provides in subsection (a) that "[a] lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding." Subsections (b)

---

[1] The subject line of the e-mail reads, "Hoyle and White FRCP 408 discussion." Hoyle's counsel presumably meant to reference Federal Rule of Evidence 408, not the Federal Rules of Civil Procedure. Nonetheless, "settlement offers are only inadmissible when offered to prove liability of damages[,]" not – as here – to show motive. *See Coakley & Williams Const., Inc. v. Structural Concrete*, 973 F.2d 349, 353-54 (4th Cir. 1992); *see also Computer Ass. Intern., Inc. v. Am. Fundware, Inc.*, 831 F. Supp. 1513, 1531 (D. Colorado 1993) ("Rule 408 is a preclusionary rule, not a discovery rule. It is meant to limit the introduction of evidence of settlement negotiations at trial and is not a broad discovery privilege." (emphasis added)).

and (c) offer examples of permissible versus impermissible conduct. Courts often enter protective orders when lawyers show an unwillingness to adhere to Rule 3.6. *See, e.g., Green v. DeMoss*, 2021 WL 3609300, *10 (W.D. La. 2021) (holding that, because the lawyers "either don't understand Rule 3.6, or do not care what it says[,] [a] Protective Order is necessary so this Court can address further violations with sanctions"); *see also Bradley v. Cooper Tire & Rubber Co.*, 2007 WL 9775644, *1 (S.D. Miss. 2007) (The Court "orders the parties to adhere to Rule 3.6 of the Rules of Professional Conduct.").[2]

At their press conference, Hoyle's counsel made various statements that are presumptively prejudicial under Rule 3.6(b). *See* 6 MS PRAC. ENCYCLOPEDIA MS LAW § 59:129 (2d ed.) (outlining the "six categories of statements that presumptively will violate the general prohibition of subdivision (a)"). Most notable are comments about "the character, credibility, [and] reputation" of Officer Brown and the City. *Compare id. with* Press Conference Transcript, Doc. No. 42-1. A bullet-pointed list is provided in the Background section above, but some of the more poignant examples include: calling Officer Brown a "cancer[,]" saying he "is harmful to the community[,]" and suggesting that he has and will engage in criminal conduct; accusing Officer Brown and the City of being involved in a "coverup" and "destroying" evidence; making accusations supported by only anonymous alleged witnesses, such as that Officer Brown took inappropriate pictures and made jokes about people's skin color; and made claims contradicted by their own client's guilty plea, including that Officer Brown did not see him run a red light and that his crime was a "minor" one. *See* Press Conference Transcript, Doc. No. 42-1.

---

[2] Entry of a protective order springs from a trial court's "'affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity.'" *See United States v. Brown*, 218 F.3d 415, 423 (5th Cir. 2000) (quoting Supreme Court precedent). The duty serves to protect the parties in the case before the Court, related proceedings, and the public at large – all having an interest in equal justice under the law. *Id.* at 424.

5

Likewise in the presumptively prejudicial category is "information regarding inadmissible matters[.]" A few examples included in the bullet-pointed list from the Background section above are: the suggestion that Officer Brown will be criminally prosecuted,[3] the suggestion that he will engage in witness tampering, and the suggestion that he makes jokes because of people's skin color. *Id.*

Then there is Rule 3.6(c), inclusive of certain topics that lawyers may address only if done "without elaboration[.]" Examples relevant to subsection (c) include: extensive discussion of how Hoyle's counsel supposedly believes Officer Brown should have handled the pursuit, how Officer Brown should have handled the apprehension of Hoyle, and how the City should have disciplined Officer Brown; suggestions about the outcome of the FBI investigation; and accusations of evidence destruction. *Id.*

The statements examined individually, and certainly collectively, suggest that Hoyle's counsel is attempting to impermissibly "disparage the character, reputation, and credibility of the Defendants." *See Green*, 2021 WL 3609300 at *1. In fact, Hoyle's counsel made the point directly by e-mail following the press conference, when he recommended that Municipal Defendants consider resolving this case "to minimize loss, both financially and in <u>reputation</u>." *See* 11/11/2021 E-mail, Ex. D (emphasis added). Such conduct thwarts "[t]he theory of our judicial system [ ] that the conclusions to be reached in a case will be induced only by evidence and argument in open Court, and not by any outside influence[.]" *See Green*, 2021 WL 3609300 at *2.

*Green*, to be sure, provides a very recent illustration of this principle. Like this case, a civil case followed an incident where the police had engaged in a high speed pursuit of a fleeing

---

[3] Rule 3.4(b)(4) also makes it presumptively prejudicial to provide "any opinion as to the guilt or innocence of a defendant or suspect in a criminal case or proceeding that could result in incarceration,]" thus implicating Hoyle's counsel statement that "the real justice may come from the department of justice with the FBI investigation[.]" *See* Press Conference Transcript, Doc. No. 42-1 at pp.24-25.

6

suspect. *Id.* at *1. Defense counsel pointed to numerous efforts by plaintiff's counsel to prejudice the civil case, including tweets, statements at rallies, and media interviews. *Id.* at pp.3-6. Overall, plaintiff's counsel sought to create a "carnival atmosphere" around the case. *Id.* at *2.

The *Green* court entered a protective order, explaining that plaintiff's counsel "either d[idn't] understand Rule 3.6, or d[idn't] care what it says[.]" *Id* at *10. Legal proceedings, the court explained, "are not like elections, to be won through the use of the meeting-hall, the radio, and the newspaper." *Id* at *2. "Cases are too often tried in newspapers before they are tried in court, and the cast of characters in the newspaper trial too often differs greatly from the real persons who appear at the trial in court, and who may have to suffer its distorted consequences." *Id.*

So it is with this case as well. Despite previously saying they would not "comment[ ] on active litigation[,]" *see* Article, Ex. B, Hoyle's counsel now, in the face of a dispositive motion, appears bent on litigating this case in the media. It contravenes the express purpose of the Federal Rules of Civil Procedure for Hoyle's counsel to threaten to "make this so expensive for the city that they" "do the right things from now on because they don't want to lose their budget." *See* Press Conference Transcript, Doc. No. 42-1 at p.24. Rule 1 seeks to "secure the just, speedy, and inexpensive determination of every action and proceeding."

Mississippi courts have not wavered over the importance of protecting the integrity of the judicial process in this context. *See Bradley*, 2007 WL 9775644 at *1 ("order[ing] the parties to adhere to Rule 3.6 of the Rules of Professional Conduct"). One example is *Gulley v. State*, 779 So. 2d 1140, 1147 (Miss. Ct. App. 2001), where a prosecutor made the "statement that the evidence would show that Gulley embezzled money[.]" This was held to be a violation of Rule 3.6 because it constituted "a comment on [the accused's] guilt." *Gulley*, 779 So.2d at 1147.

"The better practice[,]" the court said, "would have been to refuse to make any comments on the case until trial concluded." *Id.* That would be the "better practice" here as well, just as Hoyle's counsel acknowledged in July of this year. *See* Article, Ex. B.

## CONCLUSION

For the reasons explained, this Court should enter a protective order similar to that entered in *Green*, memorializing counsel's Rule 3.6 obligations.

Dated: November 18, 2021.

        **RESPECTFULLY SUBMITTED,**

        **PHELPS DUNBAR, LLP**

BY:    */s/ G. Todd Butler*
        G. Todd Butler, MB #102907
        Mallory K. Bland, MB #105665
        4270 I-55 North
        Jackson, Mississippi 39211-6391
        Post Office Box 16114
        Jackson, Mississippi 39236-6114
        Telephone: (601) 352-2300
        Telecopier: (601) 360-9777
        Email: butlert@phelps.com
               blandm@phelps.com

        **ATTORNEYS FOR MUNICIPAL DEFENDANTS**

## **CERTIFICATE OF SERVICE**

I certify that, on November 18, 2021, I had a copy of this document electronically filed with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to all counsel of record.

*/s/ G. Todd Butler*
G. TODD BUTLER