IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

ADRIAN HOYLE,

    Plaintiff,

vs.

CAUSE NO.: 3:21-cv-171NBB-RP
JURY DEMANDED

CITY OF HERNANDO, SCOTT WORSHAM,
in his official capacity as Chief of Police of the
Hernando Police Department, OFFICER
LYNN BROWN, Individually and in his
official capacity as a Hernando Police Officer,
and OFFICER HUNTER SOLOMON,
Individually and in his official capacity as a
Hernando Police Officer

    Defendants.

## PLAINTIFF, ADRIAN HOYLE'S, RESPONSE TO MUNICIPAL DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

### INTRODUCTORY STATEMENT

Rule 3.6 of the Mississippi Rules of Professional Conduct speaks for itself.

The undersigned is confident that Rule 3.6 has not been violated, and frankly, this appears to be a deflection attempt, on behalf of a lawyer who wants to refer to lawyers for the Plaintiffs as "sham" artists, and lawyers who are not candid with the tribunal, from acknowledging the obvious. See Answer of Municipal Defendants to Amended Complaint (Doc. No. 10); Municipal Defendants' Motion for Judgment on the Pleadings, or Alternatively, for Summary Judgment and Memorandum in Support of Municipal Defendants' Motion for Judgment on the Pleadings, or Alternatively, for Summary Judgment. (Doc. Nos.; 12 & 13).

This Court should realize and know that counsel for the Defendants, Todd Butler (hereinafter Mr. Butler), placed the very issues that he complains about now in the public record by filing all of it with the Court.

For example, Mr. Butler conventionally filed the dash cam videos of Lynn Brown and Hunter Solomon (hereinafter Brown and Solomon), in this case file.

The media requested those videos from many sources, and when they requested it from the Plaintiff's lawyers, it was refused. Instead, the media, as the Court Clerk's records will surely show, went to the Court Clerk's office and purchased or obtained copies of the public records that Mr. Butler filed with the Court.

Next, and probably most telling, counsel for Plaintiff, the undersigned, in a spirit of cooperation, requested of Mr. Butler, after this lawsuit was filed, the audio recordings of the dispatch transmissions with Brown and other officers. Mr. Butler refused the verbal request saying that the audio transcripts or audio itself would be matters discoverable, and discovery was not being permitted. Counsel for Plaintiff explained to Mr. Butler that the dash cam video viewing would be helpful if the live audio transmissions could be listened to. As stated before, Mr. Butler refused to provide those audio recordings even though the dispatch audio itself is widely recognized as a pubic record. <u>So, how did the media get the dispatch audio?</u> Chief Worsham gave those audio tapes to reporter, Jeni DiPrizio, and Jeni DiPrizio aired those audio tapes in the news. If it is necessary for the Court, the undersigned, Martin Zummach, will gladly sign an affidavit that the first time he ever heard the dispatch audio was from the news media. The news media obtained those dispatch audio transmissions from Chief Worsham, Mr. Butler's client.

2

Mr. Butler continues to obfuscate the facts, but unlike Mr. Butler, the undersigned will not disparage Mr. Butler's candor with the tribunal.

As it relates to the FBI investigation opened against officers or the police department itself, that information did not come from anyone other than Mayor Chip Johnson who sent out a public document to city leadership indicating that Chief Worsham informed him that the FBI had notified the Hernando Police Department that they would be investigating the "dog bite case." The media obtained that email from the City of Hernando. So, the public announcement of a FBI investigation came from Mr. Butler's own client.

The truth is that the existence of a FBI investigation of presumably Brown and Solomon is that counsel for Plaintiff first learned of that development after Mayor Johnson's public written statement to other city leaders which was then disseminated to the media by the city itself.

Mr. Butler states, as if it is a matter of fact, that the FBI had received a complaint from "someone" requesting interviews of witnesses. See Municipal Defendants' Memorandum in Support of Motion for Protective Order, page 2, wherein Mr. Butler states:

> Undersigned counsel was notified that **someone** lodged a civil rights complaint and that a FBI agent had been assigned to request interviews of certain Hernando officers, including Brown. (Doc. No. 43; Page 2)

One should ask how in the world does Mr. Butler know that "someone" (suggesting a lone individual) lodged a civil rights complaint versus the possibility that numerous people knowledgeable of the facts of both cases had notified the Department of Justice long ago versus "someone" simply complaining to the Department of Justice a month ago?

Again, Mr. Butler, at page 3, tends to not tell all of the facts when he states:

> Hoyle's counsel played the video that is before this Court at Doc. No. 10-1, but skipped over the portion that shows Hoyle driving erratically . . . (Doc. No. 43; Page 3)

First of all, that is not true. Watching the press conference, one will see that the undersigned offered to the media, who actually already had the entire video from the clerk's office, if they wanted to watch the seven and a half minutes of Mr. Hoyle's "irresponsible" driving that preceded the arrest. "Irresponsible" is how Plaintiffs' counsel, in the introduction of the video, referred to Mr. Hoyle's driving which is quite candid in light of the outcome of the chase. The fact that the media did not want to watch seven and a half minutes of video because they had already watched it was not an act of the undersigned. Again, Mr. Butler takes liberty with the description of Plaintiff's counsel's conduct when the reality is he is the one who placed these very items of evidence before the media.

Another example is at page 3 when Mr. Butler states:

> Hoyle's counsel states that Municipal Defendants have 'destroyed' evidence . . . despite undersigned counsel having made efforts prior to the press conference to determine what Hoyle's counsel believes has been destroyed. (Doc. No. 43; Page 3)

As an initial response Plaintiff would ask, since when is it up to a party to describe for the other party accused of destroying evidence what they <u>know</u> has been destroyed. The truth of the matter is when Mr. Butler's co-counsel badgered the undersigned, the undersigned gave her one example, and that was by asking her "Where is Brown's vehicle involved in the White car chase?" What the Court has not had to come to grips with yet is the spoilation or destruction of evidence on the part of the City of Hernando. Attached as Exhibit "A" is a spoilation letter sent to the City of Hernando Police Department and its Mayor asking that Brown's vehicle be

safeguarded. It was learned after suit was filed that the City of Hernando not only did not safeguard the vehicle but had sold the vehicle to another police department. There can be no clearer example of spoilation or destruction of evidence. If Mr. Butler was confused about Plaintiff's position on destruction of evidence, Plaintiff placed it right there in the Complaint when the Plaintiff alleged that the City of Hernando had destroyed or spoilated evidence. Upon information and belief, there will be many more examples of spoilation, but until discovery is permitted to actually place it in the record before the Court, it would be improper to again educate Mr. Butler as to what Mr. Butler's client has presumably destroyed. Mr. Butler should maybe use the spoilation letter as a framework to learn from his clients what still exists instead of being insulted by the assertion that the City of Hernando destroyed, transferred or lost substantive evidence.

However, as Plaintiff's counsel, the undersigned, stated in the press conference, there is not one fact in the Amended Complaint filed in this cause that is not supported by a witness prior to the Amended Complaint being filed.

This is all but a small sampling of Mr. Butler's protests to the statements made by counsel in a public meeting of media.

Mr. Butler's attachment of an invitation to begin settlement negotiations is so beyond the pale of appropriate behavior, counsel for Plaintiff will not address it.

In any event, Rule 3.6 of the Mississippi Rules of Professional Conduct states:

> (a) A lawyer shall not make an extrajudicial statement that a reasonable
> person would expect to be disseminated by means of public communication
> if the lawyer knows or reasonably should know that it will have a
> substantial likelihood of materially prejudicing an adjudicative proceeding.

(b) A statement referred to in paragraph (a) ordinarily is likely to have such an effect when it refers to a civil matter triable to a jury, a criminal matter, or any other proceeding that could result in incarceration, and the statement relates to:

    (1) the character, credibility, reputation or criminal record of a party, suspect in a criminal investigation or witness, or the identity of a witness, or the expected testimony of a party or witness;

    (2) in a criminal case or proceeding that could result in incarceration, the possibility of a plea of guilty to the offense or the existence or contents of any confession, admission, or statement given by a defendant or suspect or that person's refusal or failure to make a statement;

    (3) the performance or results of any examination or test of the refusal or failure of a person to submit to an examination or test, or the identity or nature of physical evidence expected to be presented;

    (4) any opinion as to the guilt or innocence of a defendant or suspect in a criminal case or proceeding that could result in incarceration;

    (5) information the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and would if disclosed create a substantial risk of prejudicing an impartial trial; or

    (6) the fact that a defendant has been charged with a crime, unless there is included therein a statement explaining that the charge is merely an accusation and that the defendant is presumed innocent until and unless proven guilty.

(c) Notwithstanding paragraph (a) and (b)(1-5), a lawyer involved in the investigation or litigation of a matter may state without elaboration:

    (1) the general nature of the claim or defense;

    (2) the information contained in a public record;

    (3) that an investigation of the matter is in progress, including the general scope of the investigation, the offense or claim or defense involved and, except when prohibited by law, the identity of the persons involved;

    (4) the scheduling or result of any step in litigation;

    (5) a request for assistance in obtaining evidence and information necessary thereto;

    (6) a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest; and

    (7) in a criminal case:

        (i) the identity, residence, occupation and family status of the accused;

        (ii) if the accused has not been apprehended, information necessary to aid in apprehension of that person;

      (iii) the fact, time and place of arrest; and (iv) the identity of
investigating and arresting officers or agencies and the length of the
investigation.

Breaking the Rule down, addressing the facts or presentation of a video that Mr. Butler himself filed with the Court for the media to obtain, could not have a substantial likelihood of materially prejudicing an adjudicative proceeding. If it did, the undersigned doubts that Mr. Butler would have filed it with the Court and made it a public record.

Rue 3.6(b) states:

> (b) A statement referred to in paragraph (a) ordinarily is likely to have such an effect when it refers to a civil matter triable to a jury . . . <u>and</u> the statement relates to:

The Rule then sets out six (6) areas. The only <u>possible</u> sub paragraph that is remotely related to the case at hand is paragraph (1) which states:

> (1) the character, credibility, reputation or criminal record of a party, suspect in a criminal investigation or witness, or the identity of a witness, or the expected testimony of a party or witness;

Brown's history, character, and reputation is directly at issue in the case at hand and goes directly to what the City of Hernando and its police department knew or should have known about Brown's propensities to misuse a vicious K-9 police dog. So much so that commenting on his past is relevant and truthful, and frankly, will be admissible at trial.

Paragraph (2) does not apply at all as it relates to criminal cases or proceedings that could result in incarceration.

Paragraph (3) does not apply as it relates to the performance or results of an examination or test or the refusal or failure to submit to a test.

Paragraph (4) does not apply because again, it applies to a criminal case only.

7

Paragraph (5) does not apply because presumably the evidence placed in the record by Mr. Butler will be admissible as evidence in the upcoming trial.

Paragraph (6) does not apply because again, this is not a criminal case.

Rule 3.6 (c) provides adequate safe harbor to public statements by a lawyer involved in the investigation or litigation of a matter when they state without elaboration the general nature of the claim and the information contained in the public record (provided by Mr. Butler, Mayor Chip Johnson or Chief Worsham). The remaining paragraphs in Rule 3.6 either do not apply because again, this is not a criminal case, nor was there any elaboration other than on the very evidence that Mr. Butler placed in the public record including his reference to Plaintiffs' Complaint as a "sham."

This Motion for Protective Order is nothing more than a case of Mr. Butler trying to inflame the Court against the Plaintiff just as he did in filing his Answer referring to the Complaint as a "sham."

In closing, Shakespeare had it right when responding to Queen Gertrude's insincere overreaction as another character in *Hamlet* when the Prince says, "The Lady doth protest too much, methinks" in her attempt to prove the guilt of the murder of the king.

The undersigned counsel would ask Mr. Butler to be candid with the Court and answer the following questions regarding the dissemination of the information in the press conference.

> 1. Were the dash cam videos provided to the media by the Court Clerk who had received them from Mr. Butler in his filings?
>
> 2. Did Chief Worsham provide reporter, Jeni DiPrizio, the audio tapes of the dispatch transmissions involved in this car chase?
>
> 3. Did Mayor Chip Johnson send an email to the city leaders indicating that he had been informed by Chief Worsham that the FBI was investigating the City of Hernando Police Department?

4. Does Mr. Butler have anything he can present to the Court that any of this information was provided to the media by Plaintiff or Plaintiff's counsel, or that any of the information was misleading?

5. Does Mr. Butler deny that in the face of a spoilation letter, the City of Hernando and its police department transferred the vehicle which had been asked to be safeguarded to another police department with no notice to Plaintiffs to permit an inspection?

These two (2) cases (White and Hoyle v. City of Hernando, et al.,) involve matters of important public interest. Plaintiffs' counsel is permitted to respond to insulting and scurrilous comments made by defense counsel in pleadings. Mr. Butler wants to act with impunity, and then cry foul when someone calls his hand at it. Counsel for Plaintiffs notice that Mr. Butler did not file with the Court emails between Plaintiffs' counsel and him pursuant to FRCP 11 safe harbor provisions regarding the truth of the statements made in his Answer and offering him an opportunity to withdraw certain statements as they were without merit and would never have any merit and were instead attacks on Plaintiffs and their lawyers.

The Motion for Protective Order should be denied.

Respectfully Submitted,

SPARKMAN-ZUMMACH, P.C.

*S/Martin Zummach*
Martin Zummach (MS #9682)
7125 Getwell Road, Suite 201
Southaven, MS 38671
662-349-6900 -- Office
662-349-6800 – Fax

*S/Murray Wells*
Murray Wells (TN #21749)
81 Monroe Avenue, Ste. 400
Memphis, TN 38103
901-507-2521 -- Office
901-507-1791 – Fax

Certificate of Service

The undersigned certifies that on the ___24th___ day of November 2021, a copy of the foregoing document was electronically filed with court clerk using the CM/ECF System which sent notification of such filing to all counsel of record.

*S/Martin Zummach*